63 So.2d 310 (1953)
LOFTIN et al.
v.
BRYAN.
Supreme Court of Florida, en Banc.
January 27, 1953.
Rehearing Denied March 16, 1953.
*311 Loftin, Anderson, Scott, McCarthy & Preston, Robert H. Anderson, William S. Frates, William C. Steel, Don G. Nicholson, Miami, and Russell L. Frink, Jacksonville, for appellants.
Cushman, Gay & Woodard, Miami, and Caldwell, Parker, Foster & Wigginton, Tallahassee, for appellee.
MATHEWS, Justice.
This is an appeal from a final judgment assessing damages against the appellants growing out of a collision between an automobile and an engine of the appellants at Northwest Seventh Avenue in the City of Miami.
The case was tried before a jury. At the conclusion of all of the testimony for the appellee and again before the case was submitted to the jury the appellants made appropriate motions for an instructed verdict, which were denied.
This is the same crossing where an accident occurred which is described in the opinion of this Court in Loftin v. McGregor, 152 Fla. 813, 14 So.2d 574. The two cases are very similar.
In the case now before the Court the record shows that the following facts are undisputed.
At the time of the collision the engine was backing in an Easterly direction across Northwest Seventh Avenue. There were two identical headlights on the locomotive  one in front, and one in the rear. The whistle of the locomotive was blown twice  once, when it was about 12 car-lengths from the crossing and, again, when it was right at the crossing. The bell was rung for some distance from the crossing and until the engine was completely on the crossing. There is some negative testimony of some of the witnesses that they did not hear the bell or the whistle. The engineer testified that when he first saw the car, the locomotive had almost blocked Northwest Seventh Avenue, extending all the way across the south-bound lane and half way across the north-bound lane. At the time he first saw the car, it was passing another car. The locomotive did not run into the automobile but the automobile ran into and hit the engine under the cab where the engineer sat. The locomotive traveled about 35 feet after the impact.
The automobile, a 1939 Lincoln, was being driven by a man by the name of Hughes. It was not Hughes' car but was owned by the mother of Nancy Henderson. Those sitting on the front seat of the automobile were Jack Hughes, Nancy Henderson and Reginald Bryan, the appellee. Cabell Carrier and Tony Carrero were sitting on the back seat.
Hughes was familiar with this particular crossing and on the night in question he had driven over this crossing four times prior to the accident. Hughes admits that there was a car stopped, or going very slowly, approximately 70 feet from this crossing and that in order to pass the car, he pulled to the left over the center line of the street at a speed of approximately 35 miles per hour and that he increased his speed in passing the automobile. He did not see the engine until he passed this car. He remembered the car being there *312 and passed it just before he had the accident. He further testified that just after he passed the car, he saw a big black object in front of him over the crossing.
The contention is made that this was a heavily traveled crossing and that the appellant was, therefore, called upon to exercise extraordinary care and caution. It is true that it was heavily traveled, but this accident happened after three o'clock in the morning and the only automobile in the vicinity of the crossing at that time was the one which was passed by Hughes.
The engine was traveling at a speed of between three and eight miles per hour. Hughes was going 35 miles per hour as he passed the automobile and his speed picked up. A picture is in the record which shows the skid marks of Hughes' automobile as he passed back onto his side of the street of approximately 70 feet. His brakes were applied and he was still skidding at the time his automobile struck the engine.
There is a photograph in the record showing the condition of the car Hughes was driving immediately after the accident. A mere glance at this photograph is conclusive that Hughes was going at a high rate of speed at the time of the accident and taken in connection with other undisputed facts appearing in the record, is conclusive that Hughes exercised no care and caution for his own safety or for the safety of those in the car with him.
The record shows that the occupants of the automobile had been going from bar to bar and from town to town since approximately midnight, and that drinks and beers were had at these places. This may be the explanation as why no one in the automobile saw the engine until a big black object loomed immediately in front of them.
This is not a question of contributory negligence but is one where the undisputed evidence shows that Hughes' negligence was the sole proximate cause of the collision. The cases of Loftin v. McGregor, supra, and Knudsen v. Hanlan, 160 Fla. 566, 36 So.2d 192, are applicable in this case.
In the case of Loftin v. McGregor, supra, after reciting the facts, this Court said [152 Fla. 813, 14 So.2d 575]:
"He neither looked nor listened for the train. He did not slacken his speed for the crossing and did not see the train until he was too near the crossing to avoid the collision."
The appellee urges that the negligence of the driver of the automobile is not imputable to him because he was a mere guest. The record shows that the occupants of the car were more than mere guests. They were jointly on a wild party. This party was participated in by all. They knew, or should have known, of the condition of each other. The appellee was sitting on the front seat of the automobile with the driver. He had an opportunity to observe. There was a duty upon him to exercise some degree of care and caution for his own safety. The law with reference to this matter is well stated in the case of Knudsen v. Hanlan, supra [160 Fla. 566, 36 So.2d 194], in which this Court said:
"As we understand the law, a guest riding in an automobile is entitled, save under exceptional circumstances, to trust the vigilance and skill of his driver, unless such occupant knows, or by the exercise of ordinary and reasonable care should know from the circumstances of the occasion, that the driver is not exercising that degree of care in the operation of the vehicle compatible with the safety of his passenger. In such case it becomes the duty of the guest to make some reasonable attempt through suggestion, warning, protest or other means suitable to the occasion, to control the conduct of the driver. However, before the duty to warn, protest, or take other such action suitable to the circumstances of the case, arises, it is necessary that the occupant should know or have reason to know that it is reasonably essential to his own safety to attempt to warn or to control the conduct of the driver, and *313 there must be sufficient time and opportunity for the guest to give warning or make protest before the happening of the accident; for a guest in an automobile may know at a particular time what the driver is doing, yet have no reason to realize that it is necessary that he intervene for his own safety. See Restatement of the Law, Volume II, pp. 1282-1284, 1230, 1231, 1262; Huddy's Cyclopedia of Automobile Law, 9th Ed., pp. 257, 258, 265."
It is unnecessary that we consider or pass upon other assignments of error. The motion for a directed verdict in favor of the appellant should have been granted.
Reversed.
HOBSON, C.J., and TERRELL, THOMAS, SEBRING, ROBERTS and DREW, JJ., concur.