SPECTOR, Judge.
Appellant was convicted pursuant to a jury verdict upon a charge of manslaughter in two counts: first, by culpable negligence in operating his vehicle; and, second, by operating his vehicle while intoxicated. He was sentenced to imprisonment for six months to three years on the second count based on intoxication, whereas sentencing on the culpable negligence count was deferred indefinitely.
The principal question raised in support of reversing the conviction based on the intoxication count is that the court permitted in evidence, over appellant’s objection, the results of a blood alcohol test taken at a hospital where appellant had been sent by officers investigating the accident which resulted in the deaths underlying this case. Appellant’s objection to the use of the blood test as evidence is based on Section 317.171, Florida Statutes, F.S.A., rendering “ * * * reports made by persons involved in accidents * * * ” to be privileged in subsequent civil or criminal proceedings.
Shortly after 10:00 P.M. on a clear night, the decedent, who was driving his wife and child, was proceeding east on Atlantic Boulevard. The wife stated that they observed appellant’s car some 500 feet in front of them in their lane of traffic “ * * * just coming at us head-on. * * *» Then came the collision. Her husband was dead when she regained con *12 sciousness. There was testimony by a witness who had been following the appellant’s car that it was weaving “ * * * so bad that I took my foot off the gas to drop back * * * well, he went right on across the center line and hit this Chevrolet [decedent’s car] head-on.”
Officers Martin and Morgan of the Duval County Patrol arrived at the scene at 10:50 P.M. and commenced to investigate the accident and perform other necessary duties such as taking measurements, checking skid marks, clearing the roadway of debris, and the like. These two officers concluded the paper work on the accident report about 3:30 A.M. the next morning. Soon after Officers Martin and Morgan arrived on the scene, Lieutenant Staggs, their superior, arrived and rendered some assistance to them in accomplishing their investigation, mostly of a supervisory nature. Staggs stated that he smelled alcohol in the car, but could not tell whether it was from Timmons or the car and observed a number of whiskey bottles in the front of the car which were admitted in evidence.
Lieutenant Staggs did not question appellant at the scene, but did admonish him to stay in the car until an ambulance arrived. He then went to the decedent’s car and, after checking his pulse, concluded he was dead. Staggs then realized that manslaughter charges might follow and radioed headquarters to send two other officers to Duval Medical Center to try and get a blood alcohol test performed on appellant. He then assisted Officers Martin and Morgan in moving the cars from the scene and clearing off the debris. After Lieutenant Staggs left the scene, he proceeded to the Board of Health where he met Officers Dozier and Blackburn who had already obtained the blood sample for the alcohol test. The three then went back to the medical center to talk to appellant. On arrival, they found appellant in the x-ray laboratory where Staggs attempted to obtain information from appellant as to his whereabouts prior to the accident, but was unable to elicit anything more than incoherent statements about appellant’s taking his wife to a place called “Screwy Louie’s Bar.” This confrontation in the x-ray room occurred at about 12:30 A.M., some two hours after the accident.
Staggs admitted that he went to the scene of the accident to help with the investigation. He stated that his radioed request for the other two officers to go to the medical center for the blood test was not a continuation of the investigation of the accident for that investigation had by then been completed. The test was in essence the start of the manslaughter investigation, he testified.
Staggs said appellant was incoherent when he saw him at the medical center at 12:30 A.M. He seemed dazed. The trial judge asked Staggs if appellant had full possession of his normal faculties at this time, and the witness responded in the negative. On Staggs’ arrival at the medical center, appellant appeared in pain, dazed, and confused. This, of course, was after Officer Dozier had obtained the blood sample and consent from appellant.
Dr. Bancroft was called as a state witness. He saw appellant pacing up and down in a room in the emergency section about 11:00 P.M. though he was not in any acute distress, but his speech was slurred. Dr. Bancroft said that Officer Dozier asked him to do a blood alcohol test on appellant, and Dr. Bancroft then asked appellant if he were willing to have a blood alcohol test. He said he was and at that time appellant had already signed a consent to the test.
After proffer of Dr. Bancroft’s testimony! appellant objected to it on grounds that Officer Dozier was there; and since it was done under Dozier’s instruction, it was a continuation of the accident investigation. However, theretofore Dozier had not been at the scene of the accident nor was there any evidence that he had any contact with the investigation of the accident. His *13 sole involvement concerned the blood alcohol test and the manslaughter charge.
Officer Dozier testified that he went to the Medical Center in response to his radio instruction and sought out the appellant and found him sitting on a cot or table but did not see him walk. He was not in pain and was able to understand his conversation. Dozier admitted that he gave no warning about his right to an attorney or his right to remain silent because appellant “ * * * wanted to talk to me right away. * * * He was agreeable right away. He wanted the test.” Dozier said he explained the consent to appellant, and that the latter understood what he was signing. Then he got Dr. Bancroft in to take the blood.
Dozier said that after he was through with his part, he went back to the station and happened to meet Martin or Morgan and during the course of their conversation told the latter that he had gotten the blood test, which probably accounts for why the report of the accident had the DWI square on it marked.
Dr. Bancroft testified appellant consented to the blood test, that he did not appear to be in pain, and that he looked intoxicated, but he did not know whether that was from alcohol or from the trauma.
Dozier testified that he told appellant that he was not the investigating officer of the accident and that because there had been a serious accident he had been requested to obtain a blood alcohol test, and that Timmons said he wanted the test. Dozier further testified that Timmons was advised that they had to get his permission, and he responded that he understood and gave his permission after reading the form that he signed.
It is against the foregoing factual background that we must determine whether admission of the blood test in evidence violated the provisions of Section 317.171, Florida Statutes, F.S.A. We have had a series of recent cases in which we have been required to rule upon the applicability of the cited statute in a manslaughter case. The first of these cases was Cooper v. State, Fla.App., 183 So.2d 269, wherein it was held that the statutory privilege in question extended to a blood alcohol test that was taken by the investigating officer for the declared purpose of continuing his investigation of the accident and completing his accident report. The next case in which this question was considered by this Court was Coffey v. State, Fla.App., 205 So.2d 559. In Coffey we held, in an opinion written by the present writer, that where a blood alcohol test was obtained by an officer who investigated an accident, such test is inadmissible in evidence even if. the officer informs the subject that the test is sought in connection with possible manslaughter charges rather than as part of the traffic accident report. We rested our decision on what appeared to be the rule enunciated in Nash Miami Motors, Inc. v. Ellsworth, 129 So.2d 704 (Fla.App. 3d 1961). However, our decision in Coffey was quashed by the Supreme Court in State v. Coffey, Fla., 212 So.2d 632. Opinion Filed July 2, 1968. In its opinion in the last cited case, the Supreme Court, distinguishing the Coffey case from both Cooper, supra, and Ellsworth, supra, held that the statutory privilege does not continue to matters arising:
“ * * * where there is probable cause to believe that a crime has been committed in the operation of a motor vehicle, the investigating officer, after completing his accident report — which may include statements made to him by the person or persons involved in the accident who are required by Sec. 317.131 (1), supra, to make a written report of the accident, and which would be entitled to the protection of Sec. 317.171, supra— may then ‘change his hat,’ so to speak, discontinue his role as an agent of the Department of Public Safety and assume that of an officer charged with the duty of investigating a crime which he has probable cause to believe has been committed. And where, as in the instant case, every precaution is taken to make sure that the accused’s constitutional *14 rights are protected, the evidence resulting from such an investigation is as admissible in this type of case as in any other.”
Thus applying the above rule set forth by the Supreme Court in State v. Coffey, supra, to the facts recited in the forepart of this opinion, it is our opinion that the blood test in question was correctly admitted in evidence since it was obtained by an officer who was not involved in the traffic accident investigation process. Officer Dozier testified that he advised appellant that he was not investigating the accident, and both he and Dr. Bancroft stated that appellant consented to the test.
We next turn to the assignment of error directed to the culpable negligence count of which appellant was found guilty. It is contended that the trial judge erroneously instructed the jury, over appellant’s objection, as to the definition of culpable negligence. The instruction given follows:
“Now, gentlemen, culpable negligence as used in your manslaughter statute which is applicable only to Count One of this case, culpable negligence means the omission to do something which a reasonable prudent and cautious man would do or the doing of something which such man would not do under circumstances surrounding the particular case.”
In support of the challenged instruction, the State argues that it is taken from the Supreme Court’s opinion in Fort v. State, Fla., 91 So.2d 637. Examination of Fort vindicates the State’s position in that regard. However, examination of the cases cited in Fort to support the definition which the Supreme Court enunciated therein reveals that of the five cases cited, only one case, Russ v. State, 140 Fla. 217, 191 So. 296, contains language defining “culpable negligence” within the meaning of the manslaughter statute in a manner consistent with the instruction complained of in' the case at bar. In turn, the Russ case cites as authority for the definition Franklin v. State, 120 Fla. 686, 163 So. 55. In Franklin, which was a manslaughter case based on culpable negligence, the trial court defined that term in its general charge to the jury in the same manner as did the trial court in the instant case. On appeal from his conviction, Mr. Franklin urged this instruction as ground for reversal. The Supreme Court held that:
“While the charge of the court defining ‘culpable negligence’ was not as full and complete as that which is stated in Cannon v. State, supra, [91 Fla. 214, 107 So. 360]. Alleged errors in instructions are not ground for reversal where the evidence leaves no room for reasonable doubt of the defendant’s guilt, * *
Thus by tracing back the authorities on which the court relied in Fort, supra, it becomes readily apparent that a jury instruction defining culpable negligence in language such as that used in the case under review is inadequate, inaccurate, and erroneous. It could well have the effect of misleading a jury into convicting a defendant charged with manslaughter by culpable negligence upon evidence constituting proof of simple negligence only.
Though we conclude that the giving of the above discussed jury instruction would constitute reversible error in a proper case, we hasten to say that such conclusion is but a measure of premeditated dictum so far as this case is concerned inasmuch as the record before us fails to indicate that a judgment of conviction was ever entered on the culpable negligence count. Accordingly, although appellant’s assault upon the instruction is not without merit, there is no judgment upon which such meritorious argument may have its just effect.
We have considered the remaining grounds for reversal urged by appellant and find them to be without substantial merit.
Affirmed.
WIGGINTON, C. J., and JOHNSON, J., concur.