Chester A. KUKLIS and Jean S. Kuklis, Plaintiffs-Appellees,

v.

James H. HANCOCK, individually and as next friend of Lance Hancock, a minor, et al., Defendants-Appellants.

No. 28776

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 25, 1970.

---

---

E. S. Corlett, III, Sherouse, Corlett, Merritt, Killian & Okell, Miami, Fla., for defendants-appellants.

Sanford M. Swerdlin, Clewiston, Fla., for plaintiffs-appellees.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

This diversity action by Mr. and Mrs. Chester A. Kuklis for wrongful death of their minor son, Dennis, was tried by the Judge sitting without a jury and plaintiffs were awarded a total of $30,000 damages. Although the accident which gave rise to the cause of action occurred in West Germany, the parties stipulated that Florida law would control all aspects of the case. The defendants have appealed, assigning as error several evidentiary rulings made by the trial judge and some of his findings. We affirm.[1]

The evidence shows that on August 14, 1963, defendant Lance Hancock; then 16 years of age, was driving his father's Ford Taunus car, with his father's consent, on a highway near Spangdahlem, Germany. He was accompanied by the decedent, Dennis Kuklis, his 17 year old friend. Both boys were living in Germany with their parents because their fathers were U.S. Air Force personnel stationed in Germany.

At about 8:30 P.M. the car, which was speeding, left the road at or near a shallow curve and struck a tree. Dennis was killed and Lance received severe personal injuries. The car was a total wreck after the accident.

Within a short time after the accident the West German police arrived at the scene. Inspector Fuchs noticed a strong odor of alcohol in the automobile and noticed two broken bottles, one square and one round. He ordered a blood test of defendant Lance Hancock.

An ambulance from the hospital at Spangdahlem Airbase was dispatched to the scene and a Dr. Wink from the hospital conducted a preliminary examination at the scene. He ascertained that Dennis Kuklis was dead and then examined Lance Hancock. The hospital from which Dr. Wink and the ambulance were dispatched was small so Lance Hancock was driven in the ambulance, accompanied by Dr. Wink, to the 36th Tactical Hospital. There Dr. Wink ordered that a blood alcohol test be taken on Lance. There is no indication in the record whether Dr. Wink ever conferred with Inspector Fuchs or whether the blood test he ordered was the same test ordered by Inspector Fuchs.

I.

The blood test showed 1.6 miligrams of alcohol, which is equivalent to .16% by weight. Under Florida law such a percentage creates a presumption that the normal faculties are impaired. F.S. A. § 322.262(2) (c).[2] There was little or no other evidence of intoxication.

The report of the blood test was a part of Lance Hancock's original hospital records. It was admitted into evidence over defendants' objection and it formed the major basis for the trial court's finding of gross negligence.[3]

---

1. Pursuant to our Rule 18 this case is decided without oral argument.

2. Although this statute did not become effective until 1968, about five years after the accident, the District Court relied on its presumption. Defendants have not complained of this reliance so the question of retroactive application of the statute is not before us.

3. By virtue of Florida's Guest Statute, F.S.A. § 320.59, plaintiffs could not recover by a mere showing that Lance Hancock was negligent. It was incumbent upon them to show gross negligence or willful and wanton misconduct.

Defendants [4] attack the admission of the blood test results, first, on the ground that the Florida privilege statute, F.S.A. § 317.171, requires their exclusion and, second, on the ground that there was no showing of the manner and method of analyzing the alcohol content, *e. g.*, whether skin and needle were free of alcohol and whether there were other possible impediments in preserving the chain of evidence. We deal with these contentions in the order presented.

F.S.A. § 317.171 provides that accident reports shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes and that no such report shall be used as evidence in any civil or criminal trial arising out of the accident. This statute applies to the results of blood tests when the test is taken at the direction of a *police officer* investigating the accident *for purposes of including it in the accident report* which he is required to make by F.S.A. § 317.131. *See, e. g.*, State v. Coffey, 1968, Fla., 212 So.2d 632; Mitchell v. State, Fla.Dist.Ct.App.1969, 227 So.2d 728; Timmons v. State, Fla.Dist. Ct.App.1968, 214 So.2d 11; State v. Thomas, Fla.Dist.Ct.App.1968, 212 So.2d 910; Cooper v. State, Fla.Dist.Ct.App. 1966, 183 So.2d 269. Because the statute is in derogation of common law it is to be strictly construed so that no situation is held within its operation which the Legislature did not clearly intend to accord the privilege. Wise v. Western Union Telegraph Company, Fla. Dist.Ct.App.1965, 177 So.2d 765.

In the instant case a German police officer conducted some of the preliminary investigation of the accident and he did order a blood test. However, a military doctor also ordered a blood test at a military hospital. Defendants have asserted the privilege of the statute and we think it incumbent upon them to establish it before they are entitled to its protection.

From the record in this case it appears that the blood test results do not appear in the West German police report of the accident. The report itself is not in evidence. However, Inspector Fuchs testified that no mention of alcohol was made in his report because under German law at the time the doctors and not the police had the responsibility of checking for alcohol. With the exception of the brief investigation at the scene of the accident, the German police apparently washed their hands of the accident, content to let the United States Military handle any investigation and discipline since the children of military personnel were involved. The evidence affirmatively shows there was a military investigation as U.S. Air Force Captain Arthur Creighton, Chief of Security and Law Enforcement at Spangdahlem Air Force Base, requested and received the results of the blood alcohol test taken at the 36th Tactical Hospital. There is no evidence that the German police were interested in or ever were informed of the results of the test.

Implicit in the District Court's ruling admitting the hospital blood test report is the finding that if the test was taken as part of an investigation, it was taken for the United States Air Force and not for the German police. This finding is not clearly erroneous. Our *Erie* [5] guess, based on the language of the privilege statute and its purpose (to facilitate *state* agencies' work in accident prevention), as well as the construction given it in the Florida cases cited above, is that Florida courts would hold, as the District Judge in this case did, that the privilege statute is inapplicable where the blood test is taken in pursuance of a *military* investigation rather than a civilian police investigation.

4. The defendants are Lance Hancock, who was the driver of the car in which decedent was riding, and his parents.

5. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Defendants further objected to the admission of the blood alcohol test on the ground that there was no showing of the manner and method of analyzing the alcohol content and no testimony showing the absence of possible impediments in preserving the chain of evidence. They also assert that the admission of the blood test result denied them the opportunity of cross examination. Colonel Giles J. Strub, the commanding officer of the 36th Tactical Hospital, exercised administrative control and responsibility over the hospital's clinical records. He identified the alcohol test report as a true copy of the original. In addition he testified that under his administration the Nurses' Notes indicating that the hospital had performed a blood test, and which were admitted into evidence along with the blood test results, were a part of Lance Hancock's medical records made in the ordinary course of the hospital's business.

 It is not always necessary, as defendants would have us hold, that the person who made the entry or prepared the document which is sought to be admitted into evidence be called to testify. Defendants' first contention (that there was no showing of the method and manner of taking the blood test and that there was failure to show the necessary link in the chain of identification that the blood was in fact Lance Hancock's) is foreclosed by Thomas v. Hogan, 4 Cir. 1962, 308 F.2d 355, which held that the federal shop-book statute, 28 U.S.C.A. § 1732, supplies a presumption that routine tests ordinarily made in the ordinary course of a hospital's business are properly made.[6] *Thomas* said, as the statute itself dictates, that the lack of proof of identification in the chain of evidence goes to the weight of the evidence and not to its admissibility.

We do not go as far as Thomas v. Hogan apparently does to hold admissible all scientific tests ordinarily performed in the ordinary course of business. Thus hospital records "which are merely diagnostic or expressive of opinions or conclusions of the doctors," Hussein v. Isthmian Lines, Inc., 5 Cir. 1968, 405 F.2d 946, 948,—as, for example, a conclusion that a condition suffered is the result of inhalation of insect poisoning, *see* Skogen v. Dow Chemical Company, 8 Cir. 1967, 375 F.2d 692, 704–705, or that a patient is insane, *see* Mullican v. United States, 5 Cir. 1958, 252 F.2d 398; England v. United States, 5 Cir. 1949, 174 F.2d 466—may not be admissible. However, in the instant case, the hospital report contained no diagnosis or opinion. It contained only the percentage of alcohol found in the blood. That is, it contained only the *factual data* recorded during the test. The diagnosis or opinion regarding the amount of alcohol that would have to be consumed in order for that percentage to appear in Lance Hancock's blood, and that such amount showed intoxication, was rendered by live

---

6. F.R.Civ.P. 43(a) provides in part:

In all trials * * * [a]ll evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs * * *.

Earlier in this opinion, in discussing the asserted privilege under F.S.A. § 317.171, we confined our inquiry solely to Florida law without regard to finding a more liberal rule under federal law which might also have favored admissibility. We assumed, as did the parties, that F.S.A. § 317.171 involves a substantive rule of law which requires an application of Erie. However, no substantive rule of Florida law has been cited relative to the hospital records now under consideration. Therefore, we have chosen to look to the federal law which favors admissibility. In so doing, we express no opinion on whether or not the hospital record of the blood test would be admissible under Florida's business records act, F.S.A. § 92.36.

testimony and was subject to cross-examination.[7]

■ Nor were defendants, by the admission of the blood test report and the attendant presumption of regularity supplied by 28 U.S.C.A. § 1732, deprived of any opportunity of cross-examination concerning the factual data recorded during the test:

> Exceptions to the hearsay rule, permitting the introduction of reliable hearsay evidence, have existed almost as long as the rule itself, and they are deemed justified in the absence of cross-examination because of the circumstances assure the probable verity of the evidence.

Thomas v. Hogan, *supra*, 308 F.2d at 361.

The District Judge correctly held the hospital blood alcohol test report admissible.

## II.

■ Defendants next argue that, assuming the blood test results are properly in evidence, the trial court erred in rejecting the defenses of contributory negligence and assumption of the risk. In its memorandum opinion the District Court stated:

> Defendants contend that if the blood alcohol test is accepted and its consequent presumption of being under the influence of intoxicating beverages, we must infer that Dennis was aware of the quantity of alcohol consumed and the resulting effect. Thus aware, they assert Dennis assumed the risk and may not recover. Loftin v. Bryan, 63 So.2d 310 (Fla., 1953).
>
> *Each of these involves an inference that is not justified from the evidence.* Additionally, to infer the quantity consumed would have an apparent effect on Lance and that Dennis, per force,

would have observed it, imposes an inference upon an inference. This cannot be done.

The Court finds that the deceased, Dennis A. Kuklis, was not guilty of contributory negligence and did not assume the risk. (Emphasis added).

Defendants contend that the District Court's refusal to impose an inference upon an inference showed a misconception of the rules of evidence and of what the Court *could* have done and that reversal is therefore required. We need not consider whether the refusal to impose an inference upon an inference showed a misconception of the applicable rules of evidence because that was the alternative basis of the ruling. The primary finding of the Court was that the inferences which the defendants wanted the Court to draw were not justified from the evidence. This finding is not clearly erroneous. Even if, as defendants contend, the evidence is susceptible of no inference other than that defendant Lance Hancock did his drinking in the decedent's presence, it is not clearly erroneous to refuse to infer that Dennis should have known he was intoxicated. The alcohol which Inspector Fuchs and Dr. Wink smelled came from the *car*, not from Lance Hancock. All those adults who testified that they saw Lance and Dennis the night of the accident said there was no indication that Lance had been drinking—there was no odor of alcohol and *he was acting in a sober manner*. If the intoxication was not apparent to the adults there is no reason to assume that it should have been to the decedent either.

We have considered the other contentions raised by defendants and find them without merit.

The judgment is

Affirmed.

---

7. Our holding that recorded factual data appearing in a test ordinarily taken in the ordinary course of a hospital's business is admissible should put to rest finally the suggestion in footnote 5 of Thomas v. Hogan, *supra*, that "the Fifth Circuit will permit introduction of hospital records only to show what treatment the patient received, the cost of services, and the like. See Missouri Pacific R. R. Co. v. Soileau, 265 F.2d 90, 94 (5th Cir. 1959)." The cited case did not so hold. *See* Birdsell v. United States, 5 Cir. 1965, 346 F.2d 775, 779, n. 6.