**Floyd WILLIAMS et al., Plaintiffs,**

v.

**HUMBLE OIL & REFINING COMPANY, Defendant.**

**Civ. A. No. 14312.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Nov. 15, 1971.

Moise S. Steeg, Jr., New Orleans, La., Victor A. Sachse, Victor A. Sachse, III, Baton Rouge, La., for plaintiffs.

Bernard J. Caillouet, Lancelot P. Olinde, H. H. Hillyer, Jr., New Orleans, La., for defendant.

**696**

ALVIN B. RUBIN, District Judge:

The root issue in the case is whether Humble, a mineral lessee, acted as a prudent administrator with respect to premises leased from the plaintiffs. It is settled by this court's prior decision, 1968, D.C., 290 F.Supp. 408, affirmed, 5 Cir. 1970, 432 F.2d 165, that, "[w]hat action a prudent administrator would take under the circumstances is a factual question to be decided by the finder of fact in the light of the relevant evidence." 290 F.Supp. at 411 and 412.

This is a question to be determined by objective standards. The criterion is what a reasonable, prudent mineral lessee would have done. Williams v. Humble Oil & Ref. Co., *supra*, Carter v. Arkansas Louisiana Gas Co., 1948, 213 La. 1028, 36 So.2d 26; Caddo Oil & Mining Co. v. Producers Oil Co., 1914, 134 La. 701, 64 So. 684.

■ To determine what a prudent person would do in any given situation, it is indispensable to ascertain what information he *actually* had available and what additional information he *might* have obtained had he exercised reasonable diligence in making efforts to learn the facts.

The issue is, moreover, complicated by the fact that the lessors' claim is based on Humble's alleged failure to take certain actions in the period beginning in 1937 and ending in 1964, over seven years ago. What Humble actually knew at the time can only be determined by examining what is in Humble's files or by interrogating those of Humble's personnel who can remember events that occurred as much as a generation ago.

The landowners drilled no wells, and conducted no operations. And the first proceedings before the State Conservation Department were in 1963.

Humble's files are voluminous and contain much information that might be of value in determining the objective data available, the conclusions drawn from the data, and the opinions reached by Humble's geologists. Notwithstanding repeated efforts by the plaintiffs and, on the court's instructions, by Humble, Humble has not been able to locate anyone who is familiar with the manner of keeping its well files "in the late fifties."

Having found several hundred documents in Humble's files during discovery proceedings, the lessors seek to have them admitted in evidence on the basis of the Business Records Act, 28 U.S.C.A. § 1732, or on the basis they are admissions against interest. If admitted on either of these bases, the documents would be used as evidence of the underlying facts. Alternatively, the documents might be admissible to show the information available to Humble, that is, to show what information had been brought to its attention, correct or incorrect. In that event, the admissibility would be limited to the determination of Humble's actual knowledge and the documents could not be used to prove the factual correctness of any observations in them.

### THE BUSINESS RECORDS ACT

28 U.S.C.A. § 1732 provides:

"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown

to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

Thus, the statute's requirements for the admissibility of a written record are that it must be:

1. Made as a record of an act, transaction, occurrence or event;
2. Made in the regular course of a business; and
3. It must have been the regular course of that business to make such a memorandum or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

■ The federal statute is an adaptation of the Model Business Records Act, 5 Wigmore on Evidence, § 1520, p. 365. Like the various state acts adopted for the same purpose, it was "intended to put an end to logical narrowness in the use of the principle [relating to admissibility of shop book records], and to bring the rule of Evidence nearer to the standards accepted in responsible action outside of the Courts." 5 Wigmore on Evidence, § 1530a, p. 391.

"Nevertheless," Professor Wigmore continues, "it is hard to set the professional mind working on new formulas. The interpretation of the new statutes has not always found the Courts ready to give full effect to the spirit of the statutes." Ibid.

■ With respect to evidence of any origin that has probative value, the Federal Rules and practice favor admission rather than exclusion. Doubts must be resolved in favor of admissibility. Butler v. Southern Pacific Company, 5 Cir. 1970, 431 F.2d 77, 79, citing Aluminum Co. of America v. Sperry Products, Inc., 6 Cir. 1960, 285 F.2d 911 and Erie R. v. Lade, 6 Cir. 1954, 209 F.2d 948, 951.

This principle is particularly applicable where, as here, it is likely that no one person in Humble's employ ever knew all the facts or had all the responsibility for development of the Williams lease over the 27 year period at issue, and where, as here, those who knew something then, if they could now be located, must inevitably be forced to rely on records and not on memory for the details of routine business decisions made over a period of 27 years, the most recent of which was seven years ago. The problem here is even more acute than the one observed by Justice Learned Hand in 1927, and quoted with approval by the United States Supreme Court in 1943.

" 'The routine of modern affairs, mercantile, financial and industrial, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents. Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt, if only his creditor does a large enough business.' " Palmer v. Hoffman, 318 U.S. 109, 112, 63 S.Ct. 477, 480, note 2, quoting Massachusetts Bonding & Ins. Co., v. Norwich Pharmacal Co., 2 Cir. 1927, 18 F.2d 934, 937.

Let us apply the above principles to each type of the documents involved.

■ I. DOCUMENTS PURPORTING TO EVIDENCE ACTUAL FACTS CONCERNING HUMBLE'S OPERATIONS.

Humble states, "Humble cannot object to the admissibility of the first group of documents. They do evidence an act or event. They are admissible as evidence of such act or event. They were made

in the regular course of business and it was the regular course of business to make such records. And invariably, these records were made within a reasonable time after the act or event." Second Supplemental Memorandum in Support of Defendant's Objection to Plaintiff's Documentary Evidence, p. 3.

Therefore they are admitted.

## ■ II. DOCUMENTS PURPORTING TO SUMMARIZE THE HISTORY OF WELLS OR RESERVOIRS.

These documents were prepared in the regular course of Humble's business. Whenever the geologist whose responsibility it was to make recommendations concerning operation of a well or further exploration of a field was not occupied with other duties, he periodically prepared a history for each well, reflecting all data that he had learned concerning it up to that time. In addition, this history served as a basis for recommendations for further action, or inaction, by Humble.

In every case the well histories appear to have been prepared within a reasonable time after the occurrence of the events reflected in them. They did carry forward and report earlier events, but it was the practice to bring them current by recording more recent events within a reasonable period of time after they actually happened. This was not, of course, done daily or even weekly or monthly. But the statute exacts no such chronological standard. The testimony indicates that Humble's employees were expected to prepare such histories within a reasonable interval after the occurrence of significant events, and a time considered reasonable in the industry would appear to be reasonable within the meaning of the statute.

Nor does it matter that these reports are compilations. Many books of record are books of secondary entry. In order to evidence a sale, a journal may be admitted even though it reflects merely the entry originally made on an invoice.

If this is the situation even when the original record is available, it should be so *a fortiori* when the original record appears to be no longer at hand.

Certainly, as the statute expressly states,

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."

The documents of this type will, therefore, be admitted.

## ■ III. DOCUMENTS PURPORTING TO EVIDENCE GEOLOGICAL OR ENGINEERING RECOMMENDATIONS MADE BY SUBORDINATE EMPLOYEES TO THEIR SUPERIORS.

These documents evidence the complex opinions of an individual employed in a highly specialized professional capacity concerning matters of judgment. The judgment is based on a conclusion concerning structures of rock and sand far below the surface of the earth.

Whenever a geologist formulates a recommendation or drafts a structure map, he must rely to a great extent upon his own ingenuity and imagination. Even under optimum conditions no two geologists would interpret a reservoir or draft the contours of a structure map in exactly the same way. Moreover, the recommendations of two different and equally skilled geologists as to the future operation of a company would not necessarily correspond. Situations and events thousands of feet below the surface of the earth can be detected only imperfectly from the surface.

In addition, it must be acknowledged that geologists do not always work under optimum conditions. They are limited by time, the data available, the purpose of the evaluation, and the individual abilities of the geologist making the report or map. Thus, while there are numerous variables inherent in formu-

lating complex geological opinions under optimum conditions, these variables increase substantially under normal operating conditions.

But when a business employs a professional to render and record an opinion and that opinion is to serve as a basis for future action, the existence of the opinion is an operative fact. Even literal dictionary definitions include such observations in their definition of fact. Thus, Webster's Third New International Dictionary defines as "fact", "5. An assertion, statement, or information containing or purporting to contain something having objective reality." Moreover, even when dealing with statements of unalloyed opinion, whether a given opinion was held by a particular expert on a particular date is in itself a fact.

Of course, if the geologist who expressed a particular opinion appeared in court to testify to his opinions, it would be necessary to qualify him as an expert for his opinion to be admissible. However, the fact that a geologist's employment by Humble as a geologist is sufficient qualification to establish his expertness, and to make his opinion unobjectionable in this respect.

### ADMISSIBILITY TO SHOW WHAT HUMBLE KNEW AND THE PRUDENCE OF ITS JUDGMENT

With respect to these documents, the alternative basis for admissibility is also applicable. What a reasonable, prudent mineral lessee would do must depend at least in part on the opinions expressed by those persons whom he consults. If every geologist employed by Humble had asserted the categorical opinion that a certain proposed well would be a dry hole, this presumably would indicate that Humble was prudent in failing to undertake it, even though it was later learned that the well would actually have produced. Conversely, universal recommendations to drill might indicate the prudence of drilling, even though it later developed that the recommendations were wrong.

Professor Wigmore analyzes the issue with typical lucidity.

> The Hearsay rule forbids merely the use of an extrajudicial utterance as an assertion to evidence the fact asserted (*ante*, § 1766). Such a use would be testimonial, *i. e.* we should be asked to believe the fact because Doe asserted it to be true, precisely as we should be asked to believe Doe's similar assertion if made on the stand. What the Hearsay rule forbids (*ante* § 1361) is the use of testimonial evidence—*i. e.* assertions—uttered not under cross-examination. If, then, an utterance can be used as circumstantial evidence, *i. e.* without inferring from it as an assertion to the fact asserted (*ante*, §§ 25, 245), the Hearsay rule does not oppose any barrier, because it is not applicable. For example, when it is material to show that Doe knew of a sale by Roe, the letter of notification by Roe to Doe, 'Take notice that I have this day sold a carload of wheat to J.S.', is receivable, not as a testimonial assertion by Roe to prove the fact of sale, but as indicating circumstantially (*i. e.* indirectly) that Doe obtained knowledge of the sale; the fact of sale being proved by other evidence. 6 Wigmore on Evidence, § 1788, pp. 234 and 235.

Hence, Professor Wigmore concludes:

> Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned. 6 Wigmore on Evidence, § 1789, p. 235.

See United States v. James Williamson and Jack Williamson, 5 Cir., Oct. 19, 1971, 450 F.2d 585; Washington v. United States, 5 Cir. 1960, 275 F.2d 687; Mabry v. Travelers Ins. Co., 5 Cir. 1952, 193 F.2d 497; Smedra v. Stanek, 10 Cir. 1951, 187 F.2d 892; Emich Mo-

tors Corp. v. General Motors Corp., 7 Cir. 1950, 181 F.2d 70.

## ADMISSIBILITY AS PROOF OF CONTENTS

But for the reasons already given, these documents should be admitted as evidence of the facts contained in them as well.

There is some difference in the rulings of the various federal courts concerning the admissibility of opinions contained in reports. The following cases admit such opinions: Kuklis v. Hancock, 5 Cir. 1970, 428 F.2d 608 (blood alcohol test); Harris v. Smith, 8 Cir. 1967, 372 F.2d 806 (hospital records); Bridger v. Union Railway Co., 6 Cir. 1966, 355 F.2d 382 (accident reports); Thomas v. Hogan, 4 Cir. 1962, 308 F.2d 355 (medical opinion in hospital record); Glawe v. Rulon, 8 Cir. 1960, 284 F.2d 495 (hospital records); National Labor Rel. Bd. v. Pacific Intermountain Exp. Co., 8 Cir. 1956, 228 F.2d 170 (tachograph charts); Terrasi v. South Atlantic Lines, 2 Cir. 1955, 226 F.2d 823 (medical report); Pekelis v. Transcontinental & Western Air, Inc., 2 Cir. 1951, 187 F.2d 122; Korte v. New York, N. H., & H. R. Co., 2 Cir. 1951, 191 F.2d 86 (medical reports); Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir. 1950, 183 F.2d 467 (report as to causes of explosion by U.S. Bureau of Mines); Reed v. Order of United Commercial Travelers, 2 Cir. 1941, 123 F.2d 252 (diagnostic entries in hospital record).

The following cases exclude such opinions: Mullican v. United States, 5 Cir. 1958, 252 F.2d 398 (hospital records concerning mental condition of patient); Matthews v. United States, 5 Cir. 1954, 217 F.2d 409 (investigative report); Chapman v. United States, 5 Cir. 1952, 194 F.2d 974; (Report of Army Air Accident Investigation Board) England v. United States, 5 Cir. 1949, 174 F.2d 466 (hospital records and medical reports as to mental condition); United States v. Bohle, 7 Cir. 1971, 445 F.2d 54 (diagno-sis of mental condition); Taylor v. Heller and Co., 6 Cir. 1966, 364 F.2d 608 (appraisal of real estate and properties); Skogen v. Dow Chemical Co., 8 Cir. 1967, 375 F.2d 692 (medical opinion in hospital record); H. B. Zachary Co. v. Travelers Indemnity Co., N.D.Tex.1966, 262 F.Supp. 237 (investigative report); Lyles v. United States, D.C. Cir. 1957, 254 F.2d 725 (psychiatric opinion); United States v. Ware, 7 Cir. 1957, 247 F.2d 698 (memoranda made by narcotic agent); Standard Oil Co. v. Moore, 9 Cir. 1957, 251 F.2d 188 (reports containing expressions of opinion about pricing and marketing of various oil companies); New York Life Ins. Co. v. Taylor, D.C. Cir. 1945, 147 F.2d 297 (diagnosis of psychoneurotic state).

But, as Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, suggests, a distinction must be drawn between the opinions excluded in the decisions cited above and those involved here.

> In short, it is manifest that in this case those reports are not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading. 318 U.S. at 114, 63 S.Ct. at 481.

The opinions involved here were not reached after the occurrence of an event, in preparation for litigation. They were business decisions reached while determining a course of business action. Hence, they meet not only the test of regularity, as discussed in *Palmer*, but the test of probative value, and inherent validity.

Of the cases that exclude a record of an opinion made contemporaneously with the events involved in the suit, and not in the course of litigation, many deal with a résumé of opinion with respect to mental condition. These are opinions

notably difficult to reach, and with respect to which the basis for the determination and the reasons for it determine what weight, if any, is to be given the opinion expressed. None of the cases exclude an opinion reached in the regular course of business operations and intended to be acted on in that business. Hence these documents will be admitted as evidence of the facts asserted in them.

## IV. DOCUMENTS PORTRAYING EITHER IN WRITTEN FORM OR IN THE FORM OF STRUCTURE MAPS, CONCEPTS AND OPINIONS FORMULATED BY EMPLOYING VARIABLES WHICH REQUIRED JUDGMENT EVALUATIONS.

This group of documents appear to be governed by the principles set forth in III. and is admissible.

## V. ROUGH SKETCHES, UNIDENTIFIED NOTES, ETC.

■ A number of the proposed exhibits are miscellaneous documents found in Humble's well files, usually prepared by hand. Typical of these are D–62B (which appears to be a contour map of some unidentified mineral sand and which has some handwritten notes; the authorship and purpose of this document is unknown) and D–62C (a similar document). These lack any indicia of accuracy. Evidently they were prepared by Humble's employees during the course of their duties and for business purposes. But there is no evidence to indicate whether they were complete or incomplete, final drafts or merely preliminary notes intended for corporate action, or merely made as a record of transient mental processes. For these reasons the objection to documents of this kind will be sustained.

Counsel for plaintiff will prepare a list of documents it considers excluded under the standards set forth in this opinion and submit it to counsel for Humble. Counsel for Humble will note any objections to the proposed list and submit them to the court if, after conferring with opposing counsel, they are unable to agree.

The conclusions reached indicate that the court need not consider whether or not any of the tendered documents are admissible as admissions.