### STATE v. LANE.
No. 76-21047-TT-AO2.

County Court, Palm Beach County, Traffic Infraction Division.

April 29, 1977.

146

Timothy Hmielewski, Delray Beach, for the state.

Michael J. Trent, Pompano Beach, for the offender.

DANIEL T. K. HURLEY, County Court Judge.

This cause came on before the court for final hearing and from the testimony and evidence adduced therein, the court makes the following —

## Findings of fact

In the early morning hours of October 12, 1976, Trooper D. L. Marvel of the Florida Highway Patrol received a radio call to respond to an accident on Interstate 95. He arrived at the scene at 2:04 a.m. and observed what he described as a single car collision. The vehicle which had been southbound on 95, veered to the right of the roadway, traveled 68 feet on the grass, collided with a guardrail, hit and knocked down a lamp post. When the officer arrived, Vincent G. Lane, the alleged offender in this case, was standing on the grass near the emergency lane; his head was bleeding.

Trooper Marvel approached Mr. Lane and detected an odor of alcohol on his breath. Deciding that the existence of a head injury precluded the successful prosecution of a driving while impaired charge, Trooper Marvel did not offer a breathalizer test, but began to ask questions in order to prepare an accident report. Lane responded that the reason for the accident was that he had gotten sleepy. He also admitted to having had several beers prior to the accident. Based upon his observations of the defendant, his view of the scene, and the foregoing admissions, Trooper Marvel issued Lane a citation for careless driving, a violation of Florida Statute 316.030.

During the infraction hearing, Mr. Lane, through counsel, moved to exclude the above admissions. Counsel argued that Rule 6.460, Fla.R.Traf.Ct., invades the substantive privilege conferred by the legislature's enactment of Florida Statute 316.066(4). The court reserved ruling and the parties submitted briefs.

From the foregoing facts, the court reaches the following —

## Conclusions of law

Florida Statute 316.066(4) states —

All accident reports . . . shall be without prejudice to the individual so reporting and shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes . . . No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident . . .

Rule 6.460, Fla.R.Traf.Ct. states —

The rules of evidence applicable in all hearings for traffic infractions shall be the same as in civil cases and shall be liberally construed by the official hearing the case. *Evidence admissible shall include but not be limited to accident reports.* (Emphasis supplied.)

To resolve the apparent conflict between these two provisions, it is necessary to determine (1) whether an infraction hearing under Florida Statute 318.14(5) falls within the definition of "any trial, civil or criminal," as that phrase is used in Florida Statute 316.066(4) and (2) whether Rule 6.460, Fla.R.Traf.Ct., is procedural or substantive.

Initially it must be recognized that the concept of infractions, a category of decriminalized traffic offenses, developed after the enactment of Florida Statute 317.171 or its successor statute, 316.066(4). The purpose of this new statutory scheme was to decriminalize certain traffic violations and "facilitate the implementation of a more uniform and expeditious system for the disposition of traffic infractions." *Levitz v. State,* 339 So.2d 655, 657 (Fla. 1976). Accord, *State v. Webb,* 335 So.2d 826 (Fla. 1976).

Mr. Justice Adkins, a longtime advocate of traffic court reform and one of the principal architects of the decriminalization plan, discussed its rationale in *State v. Johnson,* ........ So.2d ........ (Fla. 1977) (Slip Op. 50,518, March 17, 1977) —

The legislature recognized that a large number of motor vehicle offenses do not involve a high risk of harm to others or damage to property. These offenses could be dealt with informally in an administrative manner by the judge so as to reduce cost to the state and the offender. The removal of imprisonment as a possible penalty does away with the requirement of court appointed counsel for indigents. Under this pro-

cedure, the judge is free to discuss the individual problem of the offender so as to guide him toward driver improvement and safety programs . . . The proceedings are civil in nature.

It was the purpose and intent of the legislature in enacting Chapter 318 to provide a forum that could consider problems involving minor traffic infractions in an informal fashion without the necessity of applying the strictness and technicalities that often accompany routine litigation. The hearing is conducted in an informal manner by a judge without a jury. This is similar to the procedure in juvenile court . . .

# I
## *Procedures*

On first impression it would seem that an infraction hearing has little semblance to the rough and tumble of the adversary process employed in criminal and civil trials. Closer inspection, however, reveals that the draftsmen were fully aware of the intense human emotions that often exist at infraction hearings. Both the legislature and the court recognized the impact of these proceedings upon the daily lives of the citizens involved and gave careful attention to crafting procedures and standards to assure a fair and impartial hearing.

Though the proceedings are "civil in nature," *State v. Johnson,* supra, and utilize the rules of evidence applicable in civil cases, Rule 6.460, Fla.R.Traf.Ct., they are really a hybrid. The legislature was concerned lest efficiency and modernization be achieved at the expense of individual rights. Therefore 316.14(6) was enacted; it adopts the standard of proof required in criminal cases, proof beyond a reasonable doubt.

The Supreme Court established rules to implement this legislation and voiced the same concern for "fairness in administration." Rule 6.020, Fla.R.Traf.Ct. "It is undisputed that if one chooses to contest a traffic citation all constitutional guaranteed due process rights are available to him." *Levitz v. State,* supra, at 658. These include —

(1) NOTICE    ". . . [T]he judge is required to explain the purpose and procedure of the hearing and the rights of the offender."

(2) CONFRONTATION    "The law enforcement officer who issued the citation must be sworn and testify."

(3) CROSS-EXAMINATION    "The offender or counsel must be allowed to pose questions . . . [T]he judge must allow each witness to be questioned by the offender or his counsel."

(4) RIGHT TO TESTIFY    "An opportunity is given the offender to offer sworn testimony . . ."

(5) RIGHT OF FINAL ARGUMENT    ". . . [T]he offender or counsel must be permitted to make a statement in the nature of closing argument."

*State v. Johnson,* supra. Accord, Rules 6.450 and 6.140, Fla.R.Traf.Ct.

## II
### Forum

If the infraction hearing has the procedural aspects of a trial, its presiding officer and the duties and responsibilities imposed upon him confirm the judicial nature of the proceedings. The Florida Uniform Disposition of Traffic Infractions Act, Chapter 318, utilizes the term "official." At the time of the statute's enactment and indeed today (see House Bill 678, a pending bill which calls for the establishment of traffic infraction hearing officers) there was discussion of creating a class of hearing examiners to conduct traffic infraction hearings. This is not a novel concept for as the court noted in *State v. Webb,* supra, today several cities in the state of New York handle traffic offenses through administrative agencies. Nonetheless, to date, the Florida legislature has declined to take this action. Florida Statute 318.13(4) explicitly defines an official to mean "any state or municipal judge authorized by law to preside over a court or hearing adjudicating traffic infractions." Our Supreme Court has underscored the trial judge's responsibility in infraction hearings when it said —

> These duties imposed upon the judge are judicial in nature in that they are incidental to his authority to hear and determine the justiciable controversy. It is the fundamental and general duty of a judge to patrol the orderly process and progress of any cause over which he presides in such a manner that justice under the law may prevail.
> *State v. Johnson,* supra.

## III
### Consequences

In analyzing the concept of infraction hearings, it is appropriate to examine the consequences of the hearing, that is, the impact of the determination upon the offender, and to compare this with the verdicts and consequences that issued under the former criminal system. (The rules, 6.500 and 6.510, refer to "determinations" or "final dispositions" that an infraction was or was not committed. This is a conscious effort to avoid the language of the criminal process — verdicts of guilty or not guilty.) Today, pursuant to Florida Statute 318.14(5), "the official may impose a civil penalty not to exceed $500 or require attendance at a driver improvement school, or both." Admittedly, most violators are given the option of attending driving school, but it is the possibility of a substantial

civil penalty, a fine by another name, that underscores the similarity of this process with its predecessor.

> Prior to the enactment of the decriminalization law the maximum penalty for a violation of . . . most . . . traffic law violations, ranged from a fine of not more than $100 or by imprisonment for not more than 10 days for a first conviction to a fine of not more than $500 and/or by imprisonment for not more than 60 days for a third or subsequent conviction within one year of the first conviction.
> *State v. Webb.* supra, at 828.

Despite the availability of incarceration in the past, monetary fines have long been the principal and usual method of enforcing traffic laws. This remains true today.

In addition to the possible monetary penalties, it would be myopic to disregard the indirect, but nevertheless inevitable consequence of a finding that a violation has occurred. I refer to the issuance of points on a violator's driving record. Time and again this is admitted as the real reason that an individul challenges a citation. Florida Statute 318.14(7) states —

> If the charge results in a hearing, the official having jurisdiction shall certify to the department the final disposition within 10 days of hearing.

Subsection 8 states —

> When a report of a determination or admission is received by the department, it shall proceed to enter the proper number of points on the licensee's driving record in accordance with §322.27.

In practical terms, a determination that a violation has occurred has virtually the same impact upon the violator as did a verdict of guilty under the former criminal process. Indeed, in view of the heightened consciousness of the relationship between points and higher insurance rates, see e.g., Miami Herald, March 9, 1977, "Ticket Can Brand You a High Risk," there are many who would argue that a final determination in today's infraction hearing has a more immediate and costly impact than a guilty verdict of the past.

Having considered (1) the procedures and standards applicable in an infraction hearing, (2) the forum in which the hearing is conducted, and (3) the direct and indirect consequences which flow from a final determination, it seems beyond question that these constitute "a judicial examination, in accordance with the law of the land, of a cause, . . . (civil in nature), of the issue between the parties, whether of law or fact, before a court that has jurisdiction over it." Definition of "trial," Black's Law Dictionary. (Revised 4th ed. 1968.)

## IV
### *Legislative purpose*

Having determined that an infraction hearing is in fact a "trial," the question arises as to whether it is the type of trial to which the legislature intended the privilege conferred by Florida Statute 316.066(4) to apply. The first point of reference is the language of the statute. It suggests an all-inclusive coverage. "No report shall be used as evidence in *any* trial, civil or criminal, . . ." (Emphasis supplied.)

Judge Hugh Taylor, sitting on the First District Court of Appeal discussed the scope of Florida Statute 317.171 which was the predecessor statute to 316.066(4) in *Wise v. Western Union Telegraph Company*, 177 So.2d 765 (Fla. 1st DCA 1965) —

Section 317.71 is in derogation of the common law and should be strictly construed in the sense that no situation should be held within its operation to which the legislature did not clearly intend to accord the privilege. On the other hand, the statute being in part at least designed to protect the constitutional right against self incrimination, and to facilitate the ascertainment of the cause of accident, it should not be so strictly construed as to defeat the legislative purpose.

Florida Statute 316.066 reflects the establishment of definite priorities by the legislature. "The purpose of the statute [is] . . . to facilitate state agencies' work in accident prevention." *Kuklis v. Hancock,* 428 F.2d 608, 611 (5th Cir. 1970). The legislature in the exercise of its judgment, determined that it was more important to obtain accurate, first-hand information regarding the cause of an accident and thereby protect other motorists than to allow the use of a defendant's admissions as evidence against him. A statutory scheme was enacted which requires a driver involved in certain accidents to provide information, Florida Staute 316.066(1)(2) and (3), and which in turn, confers a privilege against self incrimination. 316.066(4).

It is not for the court to pass on the wisdom or utility of this policy. The legislature has spoken. Moreover, to induce compliance with its policy it has conferred a statutory privilege against self incrimination in both criminal and civil trials. The court's responsibility is to see that this right remains unimpaired.

Unquestionably, a driver's verbal admissions, given in the preparation of an accident report, are privileged under 316.066(4). *Ippolito v. Brener,* 89 So.2d 650 (Fla. 1956); *St. Germain v. Carpenter,* 84 So.2d 556 (Fla. 1956). If this court were to determine that a traffic infraction hearing was somehow not a "trial" within

the meaning of 316.066(4) and therefore hold that a driver's admissions were admissible in an infraction hearing, the statute would be eviscerated; its legislative policy would be vitiated.

All but a handful of traffic offenses are classified as infractions. Information as to the causes and reasons for these violations constitutes a vast reservoir of knowledge which must be made available to state agencies charged with highway safety. It is simply incorrect to suggest that these violations do not result in dealth, personal injury or substantial property damage. Consider for example the property damage in the case at bar. No driver charged with such an offense could be expected to be candid with an investigating officer unless he were assured that his responses were privileged. Without this protection, whatever information was obtained would be suspect, unreliable and unusable.

Therefore, the court concludes that a traffic infraction hearing held pursuant to Florida Statute 318.14(5) is a "trial" within the meaning of ". . . any trial, civil or criminal, . . ." as that phrase is used in Florida Statute 316.066(4).

# V
## Substantive v. procedural

The question then is which shall govern, Rule 6.460, Fla.R.-Traf.Ct. or Florida Statute 316.066(4)? The answer lies in a determination of whether the rule is procedural or substantive.

Article V, Section2(a) of the Florida Constitution vests the Supreme Court with rule making power —

> "The Supreme Court shall adopt rules for the practice and procedure in all courts . . ."

"The responsibility to make substantive law is in the legislature within the limits of the state and federal constitutions." *Benyard v. Wainwright,* 322 So.2d 473 (Fla. 1975). Though the distinction is not always easy to determine, the Supreme Court has offered these definitions —

Substantive law prescribes the duties and rights under our system of government.

Procedural law concerns the means and method to apply and enforce those duties and rights. *Benyard v. Wainwright,* supra.

Justice Adkins, speaking for the Court in *State v. Garcia,* 229 So.2d 236 (Fla. 1969) further refined the distinction between procedural rules and substantive rights in this fashion —

Procedural law is sometimes referred to as "adjective law" or "law of remedy" or "remedial law" and has been described as the legal machinery by which substantive law is made effective. Substantive law has been defined as that part of the law which creates,. defines, and regulates rights, or that part of the law which courts are established to administer.

Measured by these definitions, it seems beyond question that Florida Statute 316.066(4) creates and confers a substantive right. It is not a mere restatement of the privilege contained in the Fifth Amendment to the United States Constitution. It is part of a legislative plan to induce full compliance with the other porions of the statute.

The last sentence of Rule 6.460, Fla.R.Traf.Ct., ("Evidence admissible shall include but not be limited to accident reports.") is in unavoidable conflict with the statute. In such a situation the law is clear: ". . . a rule cannot abrogate or modify substantive law." *State v. Garcia,* supra at 238. The court therefore concludes that the last sentence of Rule 6.460, Fla.R.Traf.Ct., is unconstitutional and void. As a substantive measure it exceeds the authority vested in the court by Article V, Section 2(a) of the Florida Constitution. Accord, *Salome v. State,* 44 Fla.Supp. 167 (Fla. 11th Cir. Ct. 1976).

Hopefully this will resolve what has become a perplexing problem. Due to the number of visitors and seasonal residents in South Florida it is not unusual to have infraction hearings with two witnesses: the alleged offender and a police officer who investigated an accident which he did not witness. Invariably the accident report contains crucial statements by absent witnesses. Though there is a growing trend to admit "reliable hearsay" the basic concepts of fairness and due process are severely strained when an accident report is offered into evidence under these circumstances. It should be noted that this ruling does not prohibit the use of accident reports to refresh a witness' recollection in order to testify about his sensory perceptions of the accident scene. It simply holds that the report itself, and the statements and admissions given in the preparation of the report are privileged and inadmissible.

### Determination

Applying the conclusion of law to the facts of this case, the court herewith sustains Mr. Lane's objection to the admission of his statements and strikes them from the evidence.

Upon consideration of the remaining evidence and applying the standard set forth in Florida Statute 318.14(6), it is ordered and adjudged that Vincent G. Lane is found not to have violated the provisions of Florida Statute 316.030.