## DE LOACH
v.
## LOUISIANA & ARKANSAS R. CO.
No. 14601.

United States Court of Appeals
Fifth Circuit.

March 12, 1954.

Turner B. Morgan, Morgan, Baker & Skeels, Shreveport, La., for appellant.

T. W. Holloman, Joseph R. Brown, Kansas City, Mo., White, Holloman & White, Alexandria, La., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

On May 13, 1950 at about 6:30 a. m. in the Town of Hessmer, Avoyelles Parish, Louisiana, the side of a fast moving railroad passenger train and an automobile driven by Gordie E. DeLoach collided, resulting in serious personal injuries to his wife, their minor son, and to himself. This action was brought in the district court on behalf of all three and the jury returned verdicts in favor of the wife in the sum of $29,500.00, on behalf of the minor son in the sum of $2,500.00 and in favor of DeLoach in the sum of $18,000.00. Each plaintiff filed a motion for new trial. Defendant, having filed a motion for directed verdict at the close of the evidence, moved in accordance with Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., that the court set aside the verdict in favor of DeLoach and render judgment notwithstanding the verdict against him and in favor of the defendant. The court granted defendant's motion, and denied the motions of plaintiffs for a new trial, and rendered judgment upon the verdicts in favor of the wife and minor son, and judgment for the defendant and against DeLoach. DeLoach alone appeals.

His main contention seems to be that the crossing was inadequately marked and that he should be accorded the rights of a traveller to whom the presence of the crossing is unknown within the doc-

trine of such cases as Harwood v. Missouri Pacific Railroad Co., 118 Kan. 332, 234 P. 990, 40 A.L.R. 1305.

As the track crossed the highway, the rails were flush with or slightly below the level of the pavement, but were above the surface of the ground on either side of the highway. The crossing was marked by a Louisiana law stop sign, but the point is made that the sign was only thirty-five feet from the nearest rail, instead of between fifty and seventy-five feet as required by Louisiana Revised Statutes, LSA–R.S. 45:562. A warehouse building was closer to the track than fifty feet and, if placed the statutory distance from the track, the sign would have been right at the entrance to that building. In this connection, it must be remembered that the issue under consideration is not whether the defendant was negligent, but whether DeLoach, as a matter of law, was negligent proximately contributing to his own injury. He strenuously insists further that the sign was partially obscured by the shed of the warehouse, but a careful examination of the photographs in evidence demonstrates that the stop sign was visible from as far as 900 feet down the highway, becoming clearer and clearer as the automobile approached the rails. The warehouse building close to the track was on the opposite side of the highway from the direction of the approach of the train.[1] The closest building on that side of the highway was 185 feet from the railroad crossing and some further obstruction to view was caused by the depot 197 feet down the tracks. In any event, DeLoach conceded that he had not looked in that direction.[2]

DeLoach denied knowing the exact location of the track and testified that he was on it before he knew it. He admitted having driven over the railroad track at Hessmer three or four times previously and having noted the location of such landmarks as the depot and the warehouse building. Years before, he had worked for the defendant for a few months running a weed cutter between Alexandria and New Orleans and passing over this crossing. On an occasion just five weeks before the accident, he had stopped at the crossing for a standing freight train, got out of his car and engaged in conversation with the train conductor.

He was driving with his windows up to keep out the rain, at a speed he says, of 25 or 30 miles an hour, not stopping, slowing down, or looking or listening for a train. He says that he saw through his windshield the flash of the color of the train when about 150 feet from the tracks and then applied his brakes, but he collided with the side of the train with such force as to cause considerable damage to the train and make repairs necessary before it could proceed.

In our opinion, under the undisputed evidence, any recovery on the part of DeLoach is so clearly precluded by his own contributory negligence that it is not necessary for us to restate the principles of law governing rights and liabilities at railroad grade crossings in Louisiana which have been frequently and recently reviewed by this Court.[3] The judgment of the district court was right, and it is

Affirmed.

---

1. See Williamson v. Texas & Pacific Ry. Co., La.App., 66 So.2d 621.

2. "A. I was looking straight ahead, straight down the highway. It was raining, and the wind was blowing and I was looking right down the middle of the highway. I wasn't looking off to the side either way."

3. Allen v. Texas & Pacific Ry. Co., 5 Cir., 195 F.2d 545; Audirsch v. Texas & Pacific Ry. Co., 5 Cir., 195 F.2d 629; Illinois Cent. R. Co. v. Aucoin, 5 Cir., 195 F.2d 983; United States Fidelity & Guaranty Co. v. McCullough, 5 Cir., 202 F.2d 269.