STATE OF MAINE
*vs.*
OMER F. GAGNON

Aroostook.   Opinion, February 24, 1956.

*Melvin Anderson,*
*Walter Sage,* for State.

*David Solman,*
*James P. Archibald,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WALKER, BELIVEAU, TAPLEY, CLARKE, JJ.

CLARKE, J.   This is a case of homicide.   The respondent was tried in the Superior Court for Aroostook County upon an indictment charging involuntary manslaughter and found guilty. The case is before us upon exceptions by the respondent. There were four exceptions, the fourth exception dealt with the overruling by the court of the respondent's motion for a directed verdict. The other three exceptions are (1) blood test testimony, which was hearsay, admitted; (2) statement that respondent was insured, motion

for mistrial denied; (3) that State failed to prove essential elements of manslaughter.

Alfreda Marquis was killed in a motor vehicle collision on the Caribou-Van Buren Road, when the car in which she was riding and driven by her husband was in collision with a motor vehicle operated by the respondent. The happening occurred in the evening of a dark, rainy night. The highway was of the usual width and of tarvia surface.

The respondent was alone in his car, there were three other passengers in the Marquis car. The respondent claimed that when he first saw the lights of the Marquis car it was on his side of the road, that he sounded his horn twice and it appeared from the lights of the approaching car that it was pulling back to its side of the way but that the Marquis car continued on his side, an emergency existed and that he, the respondent, turned to his left to avoid a collision. Marquis claimed that the respondent came over on his side of the way and caused the collision. Both cars remained upright and on the highway following the happening.

There was evidence of drinking by the respondent but conflicting testimony as to his condition. The respondent was badly injured in the happening. There was evidence of drinking in the Marquis car.

During the course of the trial a medical doctor was allowed, over the objection of the respondent, to give testimony regarding a blood test. A proper foundation had not been laid for this testimony and it was hearsay. We consider this exception only.

Dr. Vogell is indefinite regarding a request of respondent to have a blood test. There is no clear evidence that respondent requested it. It would appear that the doctor himself was the one who thought it wise to take it, and probably so advised the respondent. Dr. Vogell, however, took a sample

of blood and gave it to Police Officer Bernard in a test tube sealed with a cork. Bernard had asked the respondent if he wanted a blood test and the respondent said no, and Bernard testified that later he saw Dr. Vogell "drawing blood." Officer Bernard gave the vial to "Trooper" Chase who took it to Houlton the next day. Trooper Chase gave, not one, but two vials to Dr. Gagnon's secretary the next day, but which tube contained blood of respondent is not proved, if either tube actually did. Dr. Gagnon said the test showed 17 6/100 per cent but that he did not make the test, "the nurse ran it." The nurse did not testify. Dr. Gagnon's testimony was rank hearsay and inadmissible testimony relative to a blood test was therefore wrongfully a major portion of the State's case. See R. S., Chapter 22, Section 150; *State* v. *Demerritt*, 149 Me. 380.

As for the verdict there were several probabilities which might have governed the finding.

First, that the respondent was under the influence of liquor and that his condition was the proximate cause of the happening.

Second, that by reason of the dark, rainy night, that the happening might have been an accident or caused by misadventure, except for the testimony of one witness who used the term intoxicated in referring to the respondent's condition.

Third, that a breach of the statute regarding the law of the road being *malum prohibitum* might have been the proximate cause.

Fourth, that the jury might have given little weight to the respondent's witnesses and were prejudiced by hearsay evidence regarding the so-called blood test.

The dividing line between what is merely civil negligence and what is criminal negligence is often so indistinct that

inadmissible testimony concerning a blood test might, and probably would, cause a jury to improperly give too much consideration to testimony that the law says should not be considered. That the presiding justice warned the jury not to take hearsay evidence into account, could not repair any damage that was done. A careful examination of the record indicates that the jury might have weighed the probabilities but that evidence of the blood test in fact controlled its decision.

It is true that in his charge the court instructed the jury to disregard evidence of the test. The presumption is that the jury abided the instruction but common sense dictates the conclusion that the damage had already been done. Our court has ever been mindful of the constitutional rights of the accused to a fair and impartial trial. *State* v. *Corey,* 145 Me. 231. The evidence under the circumstances was of great impressiveness and was prejudicial to the respondent. We are not interested in the verdict, and have no thought of substituting our evaluation of the evidence for that of the jury. Our only interest is that which pertains to a fair trial.

*Exception sustained.*