**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**John SOILEAU, Guardian Ad Litem and Next Friend for the Minors, Geneva Soileau and Doris Manuel, Appellee.**

No. 17332.

United States Court of Appeals
Fifth Circuit.

March 24, 1959.

Rehearing Denied April 29, 1959.

---

Jesse D. McDonald, Murray Hudson, Monroe, La., Hudson, Potts & Bernstein, Monroe, La., of counsel, for appellant.

H. Alva Brumfield, Baton Rouge, La., Alfred R. Ryder, Oberlin, La., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

This action was brought to recover for personal injuries received by Geneva Soileau (Guillory) and Doris Manuel when their automobile, stalled on a crossing, was struck by a freight train of Missouri Pacific Railroad Company. Judgment was entered upon separate jury verdicts for the two injured girls, the court denying the Railroad's motion for directed verdict made at the conclusion of plaintiffs' evidence and repeated after all the evidence was in, and denying also motion for judgment notwithstanding the verdicts and for a new trial. The Railroad appeals, alleging (1) that there was no evidence of negligence on its part; (2) if there was such negligence, it was not the proximate cause of the accident; (3) that plaintiffs were contributorily negligent as a matter of law; and (4) that the court erred in admitting certain hospital records into the evidence.

In its written opinion denying the motion for judgment n. o. v., the district court accurately summarized the pertinent facts in these words:

"The accident occurred in the early afternoon of a clear day. At the time of the accident, the driver of the automobile was Geneva Soileau, 16 years of age, and Doris Manuel, also a minor and a guest passenger, was seated on the front seat beside Geneva. As the young ladies approached the crossing, Geneva brought the car to a stop close to a stop sign some 56 feet from the crossing. At that place the girls looked in both directions and saw no trains coming. Having neither seen nor heard any approaching train, Geneva placed the car in low gear and proceeded to move forward to further approach and go across the tracks. She shifted into second just as her front wheels touched the nearest rail. The crossing was extraordinarily hazardous because it was on a steep incline and the rails protruded about four inches over the ballast. Geneva was driving an old model car, and when the wheels went over the protruding rails it caused the car to stall. The momentum of the car could not carry it over the crossing because the rails blocked the wheels and stopped the forward movement. The car stalled with the front wheels clearing the track and the rear wheels remaining between the rails. The young ladies tried unsuccessfully to get the car started and were so engaged when struck by the train; they did not see or hear the train in time to get out of the car. The car had been upon the track between five and fifteen seconds when it was struck. In addition to this, a period of time was required for Geneva to shift the car [gear] and proceed upon the incline onto the track from the point she had first stopped, a distance of approximately 56 feet. When Geneva first stopped, the train was a considerable distance south of the crossing and this accounted for her failure to see it. The train was admittedly traveling 43 miles per hour, or 63 feet per second. If the car was stalled for 15 seconds, this means that the train was approximately 950 feet from the crossing at the time Geneva tried to cross and stalled."

The Railroad's brief admits that the evidence was in conflict as to whether the enginemen blew the statutory signals approaching this crossing, and it is clear that such a failure constituted negligence and that it was within the province of the jury to say that this negligence contributed to the injuries sued for.

Appellant's argument is based chiefly upon its claim that the occupants of the car were guilty of negligence as a matter of law. In determining the force of this argument it is well to consider that, in its brief, appellant concedes that there was conflict in the evidence as to the level of the ballast between the rails and the length of time the automobile remained stalled on the track. This feature of the case is well summarized

in the statement of the court below, supra, setting forth the facts which the jury was justified in finding to be established.

We quote again from the opinion of the trial court on the motion for judgment n. o. v.:

"The railroad was under a duty to keep the crossing in such condition as not to hinder, impede or obstruct its safe and convenient use. A failure on the part of a railroad to keep such crossing in repair, thereby causing injury to a traveler, renders the railroad liable in damages. The duty to keep the crossing in repair is a continuing duty to be discharged whenever the condition of the crossing is in need of repair in order for it to be safe and convenient to the traveling public. (L.[LSA]R.S. 45:324;[1] Brandon v. Texas and New Orleans Railroad Company [La.App.], 169 So. 254).

"There is evidence in the record which, if believed, would justify the finding of negligence on the part of the defendant in not keeping this crossing safe. The decided preponderance of the evidence is to the effect that the crossing was in bad condition. There is evidence that the crossing was in a defective and dangerous condition, due to the fact that it was on an incline and the rails protruded about four inches over the ballast. One witness, Dallas Bertrand, a deputy sheriff, said that it was one of the *worst* crossings. Hollis Walker, who lives in the vicinity of the crossing, and who, on the date of the accident, was in the car behind the Soileau car, also testified that at the crossing the rails were about four or five inches above the level of the crossing itself."

Our examination of the record and of the large number of exhibits, including photographs, confirms the estimate which the lower court placed upon this crossing. One or more of the Railroad's exhibits show the rails protruding practically their entire height and, although the photographs demonstrate that this was a much used gravel road, there were no planks such as are customarily found on either side of the rails.

In fact, the railroad attorneys did not, in the argument before us, deny the dangerous condition of the crossing. Rather they argued that the occupants of the car ought to have discovered the oncoming train before they did, and that the driver was acquainted with the condition of the crossing.

Assuming—a fact earnestly argued but weakened, if not contradicted by the Railroad's carefully prepared map —that it was not sufficient that the motorcar be stopped at or about the Louisiana stop sign, but that the driver should have stopped at a point between the stop sign and the track where the view was less obstructed and that her failure to do so constituted contributory negligence, we think that the court below answered this argument in its same opinion rendered on the motion above referred to:

"The burden of proving contributory negligence is upon the defendant. Certainly, there is evidence in the case that an ordinary person approaching the crossing after passing the cotton gin and looking for the train could have seen it in sufficient time to have stopped the car. But this disregards the main thrust of the plaintiffs' case and the abundant evidence supporting it to the effect that the Soileau car would have cleared the crossing in plenty of time had it not been for the fact that the car became stalled on the

[1]. This section of Louisiana Revised Statutes, 1950, reads in part as follows: "Where railroads, tramroads, dirt or plank roads cross any highway, the corporation shall so construct the works as not to hinder, impede or obstruct its safe and convenient use. * * *"

tracks. Even if the plaintiffs had been guilty of negligence, the jury would have certainly been justified in finding that their negligence was not a proximate cause of the accident because they would have easily cleared the crossing except for the stalling of the car thereon."

■ We would add to what the court below said that the evidence failed to show that the driver of the car was acquainted with the extent to which the rails protruded above the ballast.[2] The quoted evidence shows that Miss Soileau had a general acquaintance with the crossing and its surroundings, but this indefinite proof was not sufficient to show that as a matter of law she was acquainted with the current condition of the ballast. In the absence of planks or some similar stable material against the rails, it is inevitable that every motor vehicle would dislodge the loose gravel and push it from place to place; particularly is this true with respect to the heavy multiwheeled trucks which frequent the highways. The extent of the protrusion of the rails above the ballast was inevitably changing and shifting, and these general questions did not show that the driver of the car knew, when she rode up the incline and onto the tracks, that barricades four or more inches high were in her path ready to stop the forward motion of her car.

■■ We have steadfastly adhered to the rule in Louisiana cases that the issue of contributory negligence is ordinarily for the jury unless there is no substantial conflict in the evidence, or from the undisputed facts it is clear that reasonable men in the exercise of a fair judgment would be compelled to decide that the person charged was contributorily negligent. Texas & Pacific Railway Co. v. LaBorde, 5 Cir., 1958, 257 F.2d 587; Brinson v. Illinois Central Railroad Co., 5 Cir., 1957, 241 F.2d 494; Texas & Pacific Railway Co. v. Watkins, 5 Cir., 1957, 243 F.2d 171; and DeLoach v. Louisiana and Arkansas Railroad Co., 5 Cir., 1954, 210 F.2d 921, and cases therein cited. Under this test the question of contributory negligence was for the jury.

■ Appellant argues also that the court below erred in permitting over objection introduction of certain hospital records. We think the court below dealt properly with this objection and quote its language in referring to it in its order denying motion for new trial: "Defendant urges as an additional basis for a new trial its assertion that the court erred in overruling its exceptions to the receipt in evidence and the consideration of elements of plaintiffs' damage, the cost of medical treatment and services rendered by Louisiana charity hospitals. These records were clearly admissible to show the extent of the damage. No valid objection can be found to the introduction of certified copies of the charts, bills, etc., because such certified copies may be received in evidence under Louisiana [LSA–] Revised Statutes 13:3714."

This three-volume record and the large number of exhibits demonstrate that the case was carefully tried by the court and counsel and was submitted to the jury upon an unusually full and explicit charge to which few exceptions were taken. We think the case was properly submitted to the jury and that no error was committed by the trial court in denying the motions discussed.

Affirmed.

2. The Railroad relies upon these questions and answers as showing such knowledge on her part:
"Q. Did you drive your father's car on a number of occasions before this accident? A. Yes, sir.

"Q. And on a number of occasions before this accident happened, did you go across this crossing? A. Yes, sir.
"Q. Were you very familiar with that crossing before this accident happened? A. Yes, sir."