Amherst Municipal Court,
No. 4883.

STATE *v.* NORBERT FORNIER.

Argued December 6, 1960.

Decided January 20, 1961.

*Louis C. Wyman,* Attorney General and *William F. Cann,* Assistant to the Attorney General (*Mr. Cann* orally), for the State.

*Sweeney & Welts* (*Mr. Welts* orally), for the defendant.

BLANDIN, J. The defendant's underlying claim is that the State has failed "to identify sufficiently the [blood] sample analyzed by Miss Guptill as being the sample taken from the defendant." He asserts that all essential links in the chain of evidence leading from the sample analyzed to him were not established as required by our law. *State* v. *Reenstierna,* 101 N. H. 286. To determine the validity of this argument, it is necessary to examine the facts.

The record discloses that in the presence of the trooper, the doctor took blood from the defendant and placed it in a tube. The trooper then put this tube in a container which he had for the purpose and sealed the container. Early the next morning, Saturday the 23rd, he deposited the sealed container in the refrigerator in State Police headquarters in Concord. At a quarter of nine on Monday morning, the 25th, the State chemist picked up in her laboratory a sealed container which she identified as State Police container No. 255. The seal was unbroken when she did so, and it is not disputed that had the container been opened previously the seal would have been broken. Inside the container she found a tube of blood and a transmittal slip which said that the blood belonged to the defendant Norbert Fornier, that it had been taken by Dr. Burns, and that the trooper was Wendell Facteau of the New Hampshire State Police. She analyzed the blood from the tube and found that it contained .17% by weight, of alcohol.

The defendant argues that neither the doctor nor the trooper testified as to any labeling or marking for identification of the tube, that neither tube nor container was introduced in evidence, and that neither the doctor nor the trooper identified the tube and container as being the same tube and container in which the defendant's blood was placed. The defendant further points out that there was no testimony as to how the container and tube were moved from the refrigerator in police headquarters to the state laboratory, nor did all persons who handled the specimen testify. We do not believe that these objections are fatal. It is not necessary that each evidentiary fact relied upon by the State be established beyond a reasonable doubt. *State* v. *Kilcoyne*, 82 N. H. 432, 433. The ultimate question remains whether on all the evidence it could be found that the blood analyzed by the State chemist was the defendant's blood. Anno. 21 A. L. R. 2d 1216, 1235-1236. No rigid rule to fit every situation can be laid down, but each case must rest on its own facts. VII Wig. Ev. (3d *ed.*) *s.* 2129, *p.* 569.

Considering the entire record, especially the unbroken seal on the container and the writing found therein, the only logical and sensible explanation of the situation is that the trooper wrote the transmittal slip, placed it in the container along with the tube of defendant's blood, and that these were what the State chemist received. Although the exact course by which the container was transferred from the refrigerator in the State Police headquarters to the laboratory of the State chemist was not detailed there was

sufficient evidence to warrant a finding that the blood analyzed was the defendant's. His suggestion that some unknown person placed in a container, other than the one Trooper Facteau sealed, a blood sample not the defendant's and put it in the State chemist's laboratory with the transmittal slip found therein, seems a highly unlikely possibility. The defendant's exception to the admission of the testimony of the State chemist on the ground that the blood was not identified as his, and the denial of his motion to strike the testimony from the record for this reason is overruled.

It appeared in argument that the State Police have adopted a method by which a sample of blood analyzed by chemists can be positively identified as the blood obtained by a trooper from a specified defendant. The proof in this case did not establish that the method was followed here. Such a failure may prove fatal in different circumstances.

The defendant finally contends that since the blood was not taken from him until over thirty minutes after he was arrested, it was not evidence of his condition at the time of arrest and hence was inadmissible on that account. RSA 262:20.

It is undoubtedly true that it is the degree of intoxication at the time of the occurrence in question that is relevant. Donigan, Chemical Tests and The Law (The Traffic Institute — Northwestern University, 1957) *p.* 40. The same authority states that generally the fact that samples are taken some time after the apprehension of the accused works in his favor. *Id.,* 40. To the same effect see *Toms* v. *State,* 95 Okla. Cr. 60; *Davis* v. *State,* 165 Tex. Cr. Rep. 622.

There was no evidence before us of any of the "extraordinary circumstances" necessary to create a situation where the alcoholic content in the defendant's blood would have been lower at the moment he was apprehended than when the sample was taken. See Donigan, *supra,* 40.

In conclusion, we hold that the testimony of the chemist here was properly admitted and the defendant's exception cannot prevail. The order is

*Exception overruled.*

All concurred.