**William J. SULLIVAN, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. 3357.**

Supreme Court of Alaska.

May 5, 1978.

William F. Bulchis, Richard B. Collins, Inc., Anchorage, for appellant.

Allen M. Bailey, Municipal Prosecutor and Richard W. Garrett, III, Municipal Atty., Anchorage, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

CONNOR, Justice.

This appeal challenges the admissibility of the results of a blood alcohol test performed on appellant William J. Sullivan.

In September, 1976, police officers responding to a reported automobile accident found Sullivan pinned in his vehicle with an open beer can crushed between his legs. He was immediately transported to a hospital for treatment of his injuries. An emergency room physician ordered a blood test to ascertain whether Sullivan had ingested alcohol or a tranquilizer.

Police officer Gregory Hansen, who had been at the accident scene, spoke with Sullivan at the hospital and noticed an odor of

liquor about him. Hansen, thinking Sullivan's belligerent and irrational behavior indicated that he was intoxicated, telephoned a district court judge for permission to have a blood alcohol test performed on Sullivan. While speaking with the judge, Hansen was informed by a lab technician that blood had already been withdrawn for a medical alcohol check.

Sullivan was charged with driving while under the influence of an intoxicating liquor in violation of the Anchorage Code of Ordinances 9.28.020A. At trial, medical technologist Ronald Ward testified that he performed a test for alcohol content on a blood sample labeled "William J. Sullivan". He could not recall whether he or one of his assistants actually drew the blood from Sullivan. However, he described the standard hospital procedures for matching the name on the lab requisition form with the patient's arm band, drawing blood, and labeling specimens. He explained how the blood alcohol test is performed and how test results are recorded on a standard laboratory form. This form, indicating that the test performed on the William J. Sullivan specimen revealed a blood alcohol level of .15%, was admitted into evidence over Sullivan's objection.

Sullivan was convicted after trial by jury and sentenced to 30 days incarceration with 27 suspended, and a $500 fine with $200 suspended. The superior court affirmed the conviction. This appeal followed.

Sullivan contends that the district court erred in admitting evidence of the test results because no evidence was presented to establish who drew the blood sample from Sullivan and to prove that the blood alcohol measuring device was properly calibrated before the test was performed.[1] We disagree with those contentions.

Rule 44(a)(1), Alaska Rules of Civil Procedure, provides:

(1) *Admissibility.* Writings offered as memoranda or records of acts, conditions, or events are admissible as evidence of the facts stated therein if the court finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness. The word "business" as used herein shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not.

Such records are equally admissible in criminal proceedings. Alaska Criminal Rule 26(e); *see Wester v. State,* 528 P.2d 1179 (Alaska 1974), *cert. denied,* 423 U.S. 836, 96 S.Ct. 60, 46 L.Ed.2d 54 (1975). Since hospital records are routinely maintained and relied upon, they have long been considered "business" records and, thus, are admissible if the Rule 44(a)(1) criteria are satisfied. *Zerbinos v. Lewis,* 394 P.2d 886 (Alaska 1964); C. McCormick, *Handbook of the Law of Evidence,* § 313, at 730–33 (2d ed. 1972); *see also,* Annot., 69 A.L.R.3d 22 (1976) and cases cited therein.

Rule 44(a)(1) requires that the recordation have been made in the regular course of business at the time the recorded event occurred and that the method and circumstances of the record preparation indicate trustworthiness. This blood test was ordered by a physician, shortly after Sullivan's admission to the hospital, for his use in diagnosing and treating Sullivan's injuries. Ronald Ward testified in detail regarding the standard operation procedures for drawing, marking, and testing blood specimens. Extracting blood for blood tests is a routine hospital practice. After the blood is drawn and placed in a labeled test tube, it is logged into a logbook in the

---

1. Sullivan also alleges error in that the superior court did not articulate reasons for affirming the judgment of the district court. He raises and cursorily discusses this point in his summary of argument at the beginning of his brief. Since he offers no further elaboration or support of his position in the body of his argument, we will not consider the issue. *Euwer v. City of Palmer,* 572 P.2d 436 (Alaska 1977); *Nordin Const. Co. v. Whitney Bros. Plumbing & Heating,* 441 P.2d 122 (Alaska 1968).

central receiving area of the laboratory. It is then spun in a centrifuge to separate the red blood cells from the serum. To test for blood alcohol content, a specimen is poured into a cup and analyzed by a process which chemically breaks down any alcohol in the blood and measures the amount of alcohol with a spectrophotometer. The results are then recorded on the lab requisition form. One copy of Sullivan's form was sent to the emergency room where the blood was drawn, another went to the doctor who ordered the test, and a third copy was filed in the laboratory. It is the laboratory copy which is at issue here.

Pathologist Michael Propst, the supervisor of the laboratory, also testified. He identified the Sullivan lab form as the standard form used in his laboratory, and indicated that, according to the form, the test had been performed by Ward. Propst further described how the blood alcohol test was performed.

Sufficient foundation was laid by the testimonies of Ward and Propst to admit the lab form under Rule 44(a)(1). However, Sullivan contends that before the hospital record reflecting the results of the blood test can be admitted, evidence as to who actually withdrew the blood from Sullivan must be presented. Failure to do so, he argues, creates a fatal missing link in the chain of custody which renders the test results suspect, and denies him the opportunity to cross-examine the technician who withdrew the blood. Under the facts of this case, we do not believe that such rigid foundational facts are necessary.

Courts considering such chain of custody issues have split. Some have strictly required that every link in the chain of evidence be proven before the results would be admissible.[2] These cases express the concern that there be complete evidence that the specimen was properly extracted and clearly identified as the blood of the person being tested.[3] Other courts have held that every step need not be proven to an absolute certainty as long as the circumstances of the test provide a reasonable assurance that the sample was withdrawn and tested in a reliable manner.[4] Under this view, the ultimate question is whether sufficient evidence was presented to warrant a finding that the blood was in fact extracted from the defendant and was tested in a trustworthy manner.[5]

Many federal cases concerning the admissibility of hospital records of scientific test results arose under the Federal Business Records Act, 28 U.S.C. § 1732(a)[6] which was similar to Rule 44(a)(1). Although there was some disagreement among the circuit courts on other types of hospital records,[7] the two cases to consider the admissibility of medical blood alcohol tests held that such test results were admissible under the Federal Business Records Act. In *Thomas v. Hogan*, 308 F.2d 355 (4th Cir. 1962), a negligence action, a blood test was performed on the plaintiff immediately after his arrival at a hospital for treatment of injuries he sustained when struck by an automobile. Although the person who

2. *Lessenhop v. Norton*, 261 Iowa 44, 153 N.W.2d 107 (1967); *Utah Farm Bureau Ins. Co. v. Chugg*, 6 Utah 2d 399, 315 P.2d 277 (1957); *State v. Gagnon*, 151 Me. 501, 121 A.2d 345 (1956).

3. *Bauer v. Veith*, 374 Mich. 1, 130 N.W.2d 897 (1964); *Bruyere v. Castellucci*, 98 R.I. 129, 200 A.2d 226 (1964); 2 R. Erwin, *Defense of Drunk Driving Cases* § 27.02, at 27–10 to 27–13 (3d ed. 1977).

4. *Abercrombie v. State*, 138 Ga.App. 536, 226 S.E.2d 763 (1976); *State v. Fornier*, 103 N.H. 152, 167 A.2d 56 (1961); *State v. Coburn*, 82 Idaho 437, 354 P.2d 751 (1960); 2 R. Erwin, *supra* § 27.01, at 27–3.

5. *State v. Fornier, supra*, note 4, 167 A.2d at 57; *State v. Coburn, supra*, note 4, 354 P.2d at 757.

6. 28 U.S.C. § 1732 was amended in 1975 to strike out subsection (a). § 2(b) Public Law 93–595, January 2, 1975 (88 Stat. 1926). Rule 805 of the Federal Rules of Evidence now controls this area and in content is quite similar to the former 28 U.S.C. § 1732(a). *Accord*, Uniform Business Records as Evidence Act, Rules of Evidence, Rule 803(6).

7. See *Lew Moon Cheung v. Rogers*, 272 F.2d 354 (9th Cir. 1959); *Missouri Pacific R.R. Co. v. Soileau*, 265 F.2d 90 (5th Cir. 1959); *White v. Zutell*, 263 F.2d 613 (2d Cir. 1959); Annot., 9 A.L.R. Fed. 457 (1971), and cases cited therein.

withdrew the blood did not testify at trial, the court admitted the blood test results:

"We do not agree that the entry, to be admissible, must speak, not only of the diagnosis or the result of the test, but must also state affirmatively the qualifications of the diagnostician or of the technician and the steps taken in running the test. We read the statute as supplying a presumption that diagnoses and scientific tests are properly made by qualified personnel, if the recorded information reflects usual routine of the hospital and if it is the practice to record such data contemporaneously or within a reasonable time."

308 F.2d at 360. This approach was followed in *Kuklis v. Hancock*, 428 F.2d 608 (5th Cir. 1970), although no evidence was presented regarding the test procedure and the chain of custody of the specimen. Only the laboratory supervisor testified and identified the test results as part of the hospital's records. Both courts stated that any lack of proof in the chain of custody beyond the minimal requirements of the Act went to the weight of the evidence, not the admissibility. *Kuklis v. Hancock, supra*, at 612; *Thomas v. Hogan, supra*, at 361.

 We find the rationale expressed in *Thomas* and *Kuklis* persuasive. This test was ordered for medical reasons and it is reasonable to assume that hospital staff members are competent in the performance of their duties. Crucial life and death decisions are often made in hospitals on the basis of this presumption. We do not believe there is anything to gain by requiring a mechanistic parade of witnesses to ensure that the possibility of error or tampering is precluded beyond any doubt. *Thomas v. Hogan, supra*, at 361; *State v. Coburn, supra*, note 4, 354 P.2d at 757. Therefore, we hold that when a routine medical blood alcohol test is performed in a hospital, and the results are recorded in hospital files, Rule 44(a)(1) of the Alaska Rules of Civil Procedure supplies a presumption of regularity and accuracy to the records, and they are admissible without proof of additional foundational facts beyond the general requirements of Rule 44(a)(1).

Moreover, we do not believe this holding denies appellant his right of cross-examination.

"Exceptions to the hearsay rule, permitting the introduction of reliable hearsay evidence, have existed almost as long as the rule itself, and they are deemed justified in the absence of cross-examination because the circumstances assure the probable verity of the evidence."

*Thomas v. Hogan, supra*, at 361.

Sullivan also contends that the test results were inadmissible because there was no proof that the testing device had been calibrated. He urges that since the Alaska Administrative Code requires that Breathalyzer instruments be calibrated and logged,[8] a similar standard should be applied to blood testing devices. We decline to do so.

Breathalyzer examinations are conducted in a police environment. Sullivan's blood test was performed in a hospital with personnel who devote their full attention to medical testing and proper maintenance of their equipment. Ward testified that, although he could not recall specifically calibrating the machine for Sullivan's test, he routinely calibrates the machine before every blood alcohol test he performs when the laboratory log does not indicate that the machine had already been calibrated that day. As this was sufficient evidence of calibration, it was not error to admit the test results.

AFFIRMED.

---

8. 7 AAC 30.050 (authorized by AS 28.35.033(d)).