**UNITED STATES of America, Appellee,**

v.

**Leigh A. FARMER, Appellant.**

**CR. No. 92–00047–A–01.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Jan. 25, 1993.

Julie M. Campbell, Asst. U.S. Atty., Abingdon, VA, for appellee.

R. Wayne Austin, Abingdon, VA, for appellant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This criminal case is currently before the Court on the appeal of Appellant, Leigh A. Farmer ("Farmer"), from the United States Magistrate Judge. Farmer appeals the decision of the United States Magistrate Judge on August 25, 1992, of the above referenced violations which found her guilty of driving under the influence in violation of 36 C.F.R. § 4.23(a) (1992) and reckless driving in violation of 36 C.F.R. § 4.2 (1992) (incorporating Va.Code Ann. § 46.2–852 (1989 & Supp. 1992)) on federal property. On the reckless driving charge, the United States Magistrate Judge imposed a fine of one hundred dollars ($100.00) and a special assessment fee of ten dollars ($10.00). On the driving under the influence charge, the United States Magistrate Judge imposed a fine of four hundred dollars ($400.00), a ten dollar special assessment fee ($10.00), a thirty day suspended jail sentence, one year unsupervised probation, a condition of probation being the successful completion of the Virginia Alcohol Safety Action Program, and suspension of driving privileges on the Blue Ridge Parkway for one year. Farmer seeks reversal of her conviction, arguing that her conviction violated the double jeopardy bar and, further, that the trial court erroneously admitted into evidence or alternately gave undeserved weight to the results of Farmer's blood alcohol test. Farmer objects that required procedures under Virginia law for the withdrawal of blood were not followed and that the Certificate of Analysis is hearsay and without adequate

foundation. The following is a summary of facts relevant to the Court's decision.

## FACTS

The evidence established that on July 25, 1992, at approximately 5:45 p.m., Appellant, Leigh A. Farmer, travelling north on the Blue Ridge Parkway, a federally administered highway, drifted into the southbound lane and was involved in an automobile collision with Glenda McCormick ("McCormick"), travelling south bound, at milepost 187 in Carroll County, Virginia. Billy Gene McCraw, Park Ranger for the Department of the Interior ("Ranger McCraw"), arrived on the scene of the collision at approximately 6:00 p.m. and, in the course of his investigative duties witnessed the McCormick vehicle, a Ford Crown Victoria, resting partially in the southbound lane and primarily on the shoulder of the road. Ranger McCraw observed Farmer's car, a Chevrolet Blazer, resting at an angle blocking the southbound lane. He observed skid marks left by the McCormick vehicle in the south bound lane, but no discernible skid marks left by Farmer's vehicle in the north bound lane. He did observe sideways "gauge marks" in the south bound lane left by Farmer's vehicle after it impacted with the McCormick vehicle. Ranger McCraw made photographs and a drawing of the accident scene, which items were introduced at Farmer's trial, but no measurements were taken.

Upon talking to Farmer at the accident scene, Ranger McCraw detected that her speech was somewhat slurred, her eyes bloodshot and glassy. He also observed a strong odor of alcohol about her person. Farmer indicated to Ranger McCraw that she was the operator of the Chevrolet Blazer. Ranger McCraw found no other passengers in Farmer's vehicle, although Farmer claimed that she had not been the only occupant of the Blazer. The conversation between Ranger McCraw and Farmer occurred at the scene of the accident while Farmer was strapped onto a back board. No blood alcohol tests were given to Farmer at the scene. Ranger McCraw did not specifically observe any injuries on Farmer, but he ob-served ambulance personnel begin an intravenous infusion into Farmer.

Ranger McCraw's second contact with Farmer occurred in the emergency room of Northern Surrey Hospital within one hour of the accident. Ranger McCraw admitted that he could not state whether Farmer did or did not receive any medication while she was out of his presence. However, other than the intravenous solution which Ranger McCraw observed, and which would not affect the results of Farmer's blood test, there is no evidence that Farmer received medication prior to withdrawal of her blood sample.

While at the hospital, Farmer indicated to Ranger McCraw that she did not remember the details of the accident. She also admitted that at the time of the accident she had been returning from a jazz festival/wine tasting at the Doe Run Lodge two miles south of the accident scene. She stated that she and a friend had sampled four to six glasses of wine and had consumed a bottle of wine.

At the hospital, Farmer signed a written consent to a blood alcohol test. A registered nurse drew the blood sample in the presence of Ranger McCraw. The nurse prepared Farmer's arm with an iodine solution. The nurse collected Farmer's blood in a single vial. Ranger McCraw never discussed with Farmer the possibility of having a separate sample of blood taken. Ranger McCraw marked the vial with Farmer's name and social security number, the date, Ranger McCraw's initials, and the nurse's initials. He sealed the vial with evidence tape and placed it into a protective container for shipping. He sealed the container itself with only standard scotch tape. Ranger McCraw sent the sample by certified mail, return receipt requested, in a padded envelope to the Division of Forensic Science in Richmond, Virginia for analysis. Ranger McCraw did not submit a certificate of withdrawal with the sample, and stated at the trial that he was unaware at the time that regulations required him to do so. He did make a testing request, but no copy of the testing request was made available to the Court.

Despite a written request by Ranger McCraw that the lab send results directly to

him, the lab sent the Certificate of Analysis to the General District Court for Floyd County, Virginia. The Certificate indicates on its face that it was received by the General District Court on August 24, 1992, the day before the Magistrate Judge's trial. Ranger McCraw received a faxed copy of the results from Richmond on the same day. The original lab analysis was not received from the General District Court until August 25, 1992, the day of the trial. The vial was not returned.

The Certificate of Analysis received into evidence by the Court over Farmer's objection, indicated that Farmer's blood alcohol content was 0.14% by weight by volume. The Certificate of Analysis also stated on its face that no certificate of blood withdrawal was submitted and also noted that the container was "not sealed."

## DISCUSSION

### I. *Driving Under the Influence While on Federal Property*

#### A. **Where Offense Specifically Provided for in Federal Regulations, Virginia Statutory Procedures are Inapplicable.**

 The charge of driving under the influence in the present case was made solely under the Code of Federal Regulations. 36 C.F.R. § 4.23(a) (1992).[1] A threshold matter in any prosecution brought under this section is whether the conduct in question occurred on a federal enclave. As the Magistrate Judge recognized, this threshold showing was sufficiently established. The accident in this case between the Farmer and McCormick vehicles occurred on the Blue Ridge Parkway, a federally administered highway. Having established that Farmer drove her car on a federal enclave, this Court must decide whether the Magistrate Judge correctly found that Farmer was driving on the federal enclave while under the influence of alcohol.

 Farmer's attack on the Magistrate Judge's decision rests on the admission into evidence of Government Exhibit Six (6), the Certificate of Analysis. First, Farmer objects to the admission of the certificate both as hearsay and because a proper foundation was not laid. Specifically, Farmer argues that Virginia law requires that any certificate of analysis be filed at least seven (7) days prior to a hearing before the court. In the present case, the Certificate was received by the General District Court on August 24, 1992, the day before the Magistrate Judge's trial.

Secondly, Farmer argues that the following Virginia law requirements for the withdrawal of blood were not met in the present case and, therefore, that an adequate foundation for admission of the Certificate was not made: (1) that the requisite certificate of withdrawal was not made; (2) that the container submitted to the laboratory was not properly sealed;[2] and, (3) that medication may have been administered to Farmer which could have affected the results of her blood alcohol test.

Farmer contends that Virginia statutory procedures and criteria for withdrawal of blood bind this Court. *See Va.Code Ann.* 46.2–341.26 (1989 & Supp.1992). Relying on Section 4.2 of the Code of Federal Regulations, Farmer argues that the procedures for

---

1. Title 36, Part 4 of the Code of Federal Regulations governs vehicles and traffic safety within the areas under the control of the National Park Service, Department of the Interior. Thus, 36 C.F.R. § 4.23(a) (1992) provides in pertinent part:

 (a) Operating or being in actual physical control of a motor vehicle is prohibited while: (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or (2) The alcohol concentration in the operator's blood or breath is 0.10 grams or more of alcohol per 100 milliliters of blood or 0.10 grams or more of alcohol per 210 liters of breath.

2. The Court notes that on these grounds, under Virginia law, Appellant would likely prevail. In *Williams v. Commonwealth,* 10 Va.App. 636, 394 S.E.2d 728 (1990), the Virginia Court of Appeals held it error to admit a certificate of blood analysis, where the certificate stated on its face that the container was not sealed, even though the vial itself was sealed. The Court held that the purpose of the sealed container requirement in the Virginia Code was to prevent tampering with the vial, and that failure to comply with the requirement went to the integrity of the evidence.

the manner in which the blood is to be withdrawn must be governed by state law, because the Regulations do not specifically address the required procedures. The Code of Federal Regulations provides that "[u]nless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law." 36 C.F.R. § 4.2(a) (1992).

This Court finds Appellant's reliance on Section 4.2 misplaced. The "Achilles' heel" of Appellant's argument is the plain meaning of the Regulation's language, "[u]nless specifically addressed by regulations in this chapter." 36 C.F.R. § 4.2(a) (1992); *see also United States v. Knott*, 722 F.Supp. 1365 (E.D.Va.1989) (providing that Magistrate Judge could not impose suspension of license as punishment for a violation specifically addressed in the Code, and where federal law did not provide for such a punishment). Driving while intoxicated and accompanying tests are "specifically addressed" in Section 4.23(a) of the Regulations.[3]

Section 4.2 is in essence and effect an assimilation statute, providing for the incorporation of substantive offenses which have not otherwise been provided for in the Regulations. Appellant has been convicted of two offenses: driving under the influence in violation of 36 C.F.R. § 4.23(a) (1992) and reckless driving. Because reckless driving is an offense not specifically enumerated in the Regulations, Section 4.2 applies to incorporate the Virginia Code provisions which prohibit the offense. *See Va.Code Ann.* § 46.2-852 (1989 & Supp.1992).[4] However, the offense of driving under the influence and the procurement of blood samples for such a charge are specifically addressed in Section 4.23(a). Therefore, Section 4.2 is inapposite and no Virginia Code provisions regarding driving under the influence will be applied by this Court in the present case. Were the Court to adopt Appellant's argument, the Regulations would be required to "specifically address" all state procedures for blood withdrawal in order to preclude assimilation. Such a "nonsensical result is not required by the language of the Section 4.2(a), and was surely not intended by the drafters." *Knott*, 722 F.Supp. at 1369.

Moreover, the Court finds, in accordance with the opinion of the United States Magistrate Judge, that Farmer's objections are evidentiary in nature. The procedures and criteria regarding blood samples and the introduction of forensic analysis, as found in the Virginia Code and relied upon by Appellant, are purely state evidentiary or procedural requirements and, as such, not binding on this Court.[5]

---

3. The Regulations address intoxication tests in 36 C.F.R. § 4.23(c) (1992), which provides in pertinent part:

(c) Tests. (1) At the request or direction of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section, the operator shall submit to one or more tests of the blood, breath, saliva, or urine for the purpose of determining blood alcohol and drug content

(2) Refusal by an operator to submit to a test is prohibited and proof of refusal may be admissible in any related judicial proceeding.

(3) Any test or tests for the presence of alcohol and drugs shall be determined by and administered at the direction of an authorized person.

(4) Any test shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use.

For the complete text of subsection (a) of this section, *see supra* n. 1.

4. 36 C.F.R. § 4.2 (1992) provides:

(a) Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made a part of the regulations in this part.

(b) Violating a provision of State law is prohibited.

The relevant Virginia Code section provides:

Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving.

*Va.Code Ann.* § 46.2-852 (1989 & Supp.1992).

5. The Court notes that even Section 46.2-341.26 of the Virginia Code, upon which Appellant relies, recognizes that the steps specified in the Virginia Code for blood withdrawal are procedural and not substantive. The Virginia Code states that failure to comply with one or more of the steps only goes to the weight of the evidence and is not grounds for finding a defendant not guilty. *Va.Code Ann.* § 46.2-341.26:11 (Supp. 1992).

It is clear that in a federal criminal proceeding, federal standards govern the admissibility of evidence. *Fed.R.Evid.* 1101; *United States v. Card,* 1991 WL 8478, 1991 U.S.App. LEXIS 1327 (4th Cir.1991). Section 4.2 of the Code of Federal Regulations, under which Farmer has been convicted, is silent as to the rules of evidence which are applicable under this statute. Therefore, Rule 26 of the Federal Rules of Criminal Procedure requires that this Court apply the Federal Rules of Evidence. As a result, the procedures specified in Virginia Code section 46.2–341.26, "can be given no effect in a federal court proceeding where federal evidentiary rules apply." *Card,* 1991 WL at 8478, 1991 U.S.App. LEXIS at 1327.

### B. Application of the Federal Rules of Evidence and the Business Records Exception.

■ This Court finds it necessary to examine in detail, the admissibility of the Certificate of Analysis under federal rules of evidence. It is clear that the Certificate of Analysis was a "written assertion" constituting "statements," *Fed.R.Evid.* 801(a)(1), and that it was "offered [by the prosecution] in evidence to prove the truth of the matter." *Fed.R.Evid.* 801(c). As such, the Certificate of Analysis is hearsay. However, even though it is hearsay, the Certificate of Analysis is nonetheless admissible if it falls within the business records exception to the hearsay rule. *Fed.R.Evid.* 803(6).[6]

■ A business record is recognized as an exception to the hearsay rule because it is made in the regular course of business and therefore possesses certain "hallmarks of authenticity." *McDaniel v. United States,* 343

F.2d 785, 789 (5th Cir.1965), *cert. denied,* 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965). In order for evidence to be admissible as a business record under Rule 803(6) it must be "transmitted by" a declarant "with knowledge" in the ordinary course "of a regularly conducted business activity" as shown "by the testimony of the custodian or other qualified witness." *Fed.R.Evid.* 803(6).

The Court finds the Virginia Division of Forensic Science to be a "business" under the broad definition of the federal rule. *Fed. R.Evid.* 803(6); *see Kay v. United States,* 255 F.2d 476, 480 (4th Cir.1958) (Certificate of Analysis admissible under 28 U.S.C. § 1732 as a record made in the regular course of business where it was made in the regular performance of the official duty of the Chief Medical Examiner of Virginia). Likewise, the Certificate of Analysis is a properly admissible form of a "report, record, or data compilation" of a "condition." Furthermore, the Court finds that the performance of blood tests and the recording of such test results are clearly within the regularly conducted business of a forensic laboratory. The regular business of both private and government chemical laboratories is to analyze systematically, then record and report their analysis.

■ In the present case, Ranger McCraw, a Park Ranger for the Department of the Interior, authenticated and identified the Certificate of Analysis. The Court finds this permissible under the federal rules. While the Rule requires that a "custodian or qualified witness" testify that the requirements of the exception have been met, there is no requirement that the qualified witness must have personally participated in the creation

---

6. Records of Regularly Conducted Activity.
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
*Fed.R.Evid.* 803(6).
The Court acknowledges that under the Federal Rules of Evidence, the Certificate of Analysis may also be admissible on separate grounds as a public record. *See Fed.R.Evid.* 803(8). Several jurisdictions have specifically held routine laboratory or similar reports to be public records. *See* 2 *McCormick on Evidence* § 296, n. 29 (John W. Strong et al. eds., 4th ed. 1992).

of the document, "The phrase 'qualified witness' is to be broadly interpreted as requiring only someone who understands the system." *United States v. Moore*, 791 F.2d 566, 574–75 (7th Cir.1986) (citing *United States v. Keplinger*, 776 F.2d 678, 693 (7th Cir.1985), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986)); *see also United States v. Flom*, 558 F.2d 1179, 1182 (5th Cir.1977) (when circumstances otherwise demonstrate the trustworthiness, no employee of the preparing business need even testify).

■ The Certificate of Analysis will not be admissible under the business records exception if the "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Fed.R.Evid.* 803(6). Farmer asserts that the Court should accordingly exclude the Certificate of Analysis as untrustworthy. The Magistrate Judge overruled Appellant's objection to the introduction of the Certificate of Analysis at trial on the ground that although the container itself was not properly sealed, the vial itself remained intact. This Court also finds that the Certificate of Analysis is sufficiently trustworthy and falls short of warranting exclusion.

Establishing a chain of custody is one form of proof sufficient to support a finding that evidence is trustworthy. *Fed.R.Evid.* 901(a). *See United States v. Howard–Arias*, 679 F.2d 363, 366 (4th Cir.), *cert. denied*, 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982). The prosecution need prove only a rational basis from which one could conclude that the Certificate of Analysis reflected an analysis of Appellant's blood. *United States v. Natale*, 526 F.2d 1160, 1173 (2d Cir.1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976). Proof of the connection of the blood sample to Appellant may be made by circumstantial evidence. *United States v. Kubiak*, 704 F.2d 1545, 1552 (11th Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983). "The ultimate question," according to the Fourth Circuit, is whether the authentication testimony is suffi-

ciently complete so as to make it "improbable that the original item had been exchanged with another or otherwise tampered with." *Howard–Arias*, 679 F.2d at 366.

■ In the present case, the prosecution established that medical personnel drew the blood sample from the Appellant in the presence of Ranger McCraw. The evidence showed that the blood was collected in a vial, which Ranger McCraw immediately marked with Appellant's name and social security number, the date, his own initials, and the initials of the medical personnel withdrawing the blood. Ranger McCraw then sealed the vial with evidence tape and placed it into a protective container for shipping. The container itself, while not sealed with evidence tape, was sealed with scotch tape. The container did not leave Ranger McCraw's presence until he personally mailed it in yet another padded container, by certified mail, return receipt requested, to the Division of Forensic Science in Richmond, Virginia. The Certificate of Analysis received from Richmond indicated on its face that it was an analysis of Appellant's blood. The Certificate did not say, and Appellant does not allege, that the vial was in any way tampered with. Also, the individual who performed the test had no motive to misrepresent the test results. The Virginia Division of Forensic Science has no personal stake in the outcome of individual cases and nothing in the record reveals any such motivation. Accordingly, the Court finds the evidence established that the Certificate of Analysis was what it purported to be and that it had not been altered in any material aspect. *See United States v. Jackson*, 649 F.2d 967, 973–74 (3d Cir.), *cert. denied*, 454 U.S. 1034, 102 S.Ct. 574, 70 L.Ed.2d 479 (1981).

Any "missing links" in the chain of custody are supplied by the presumption of regularity which attaches to business records.[7] *Howard–Arias*, 679 F.2d at 366. In *Thomas v. Hogan*, 308 F.2d 355 (4th Cir.1962), the Fourth Circuit held that the results of a blood test for intoxication conducted on the

---

7. The element of unusual reliability of business records is supplied by the "high degree of accuracy" typical of business records, "The very regularity and continuity of the records are calculated to train the record keeper in habits of precision." 2 *McCormick on Evidence* § 286 (John W. Strong et al. eds., 4th ed. 1992).

plaintiff and contained in a hospital record were admissible under the federal "shop-book" statute, 28 U.S.C. § 1732, the predecessor to Rule 803(6).[8] Reversing the trial court's refusal to admit the results, the court held that the statute supplies a "presumption that diagnosis and scientific tests are properly made by qualified personnel, if the recorded information reflects usual routine of the hospital and if it is the practice to record such data contemporaneously or within a reasonable time." *Id.* at 360. In the words of one jurisdiction, concurring with *Thomas v. Hogan*, "We do not believe there is anything to gain by requiring a mechanistic parade of witnesses to ensure that the possibility of error or tampering is precluded beyond any doubt." *Sullivan v. Anchorage*, 577 P.2d 1070, 1073 (Alaska 1978).

For the reasons set forth above, this Court holds that the Magistrate Judge did not err in admitting into evidence the Certificate of Analysis, which showed that Farmer's blood contained 0.14% alcohol by weight by volume.

### C. Sufficiency of Evidence to Support Magistrate Judge's Decision.

■ Alternately, Farmer argues that failure to comply with Virginia evidentiary rules goes directly to the weight of the evidence, even if the evidence is otherwise admissible under federal rules of evidence. The Court agrees that any uncertain circumstances in the administration or interpretation of the test result go to the weight and credibility of the evidence, not to its initial admissibility. *Kay v. United States*, 255 F.2d 476, 480 (4th Cir.1958). However, examining the evidence presented in the case as a whole, the Court finds that the evidence supports the Magis-

trate Judge's finding Appellant guilty beyond a reasonable doubt.

First and foremost, this Court finds unavailing Appellant's argument that the Certificate of Analysis was unreliable and untrustworthy, for reasons detailed in the preceding section. The Certificate indicated that Farmer's blood alcohol content, 0.14%, was over the limit of the federal limit· of 0.10%, clearly establishing that Farmer was driving under the influence. The blood was taken shortly after the accident occurred. There is no evidence that Farmer ingested any medication subsequent to the accident and prior to the blood alcohol test.

Moreover, testimony of Ranger McCraw, Ms. McCormick, and photographs of the accident scene established beyond a reasonable doubt that Farmer's car was travelling in the wrong lane at the time of the accident. No discernible skid marks were left by Farmer's vehicle. Ranger McCraw observed that Farmer's speech was somewhat slurred, her eyes bloodshot and glassy. He also observed a strong odor of alcohol about her person. By her own admission, Farmer acknowledged that she was driving. She also admitted that immediately prior to the accident, together with a friend, she had sampled four to six glasses of wine and consumed a bottle of wine.

### II. Reckless Driving While on Federal Property

The charge of reckless driving has been brought under the provisions of Virginia state law, as the offense is not one specifically addressed by the Code of Federal Regula-

---

**8.** 28 U.S.C. § 1732 was amended in 1975 to exclude subsection (a). Pub.L. No. 93–595, § 2(b), 88 Stat. 1926 (1975). Rule 803 of the Federal Rules of Evidence now controls this area. In content, 28 U.S.C. § 1732(a) was very similar to the present Rule 803(6). The federal shop-book statute, 28 U.S.C. § 1732, provided:

In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence

of such act, transaction, occurrence, or event, if made in the regular course of business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter.

All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

tions. 36 C.F.R. § 4.2 (1992).[9] Appellant raises no challenge to her conviction on this charge, and the Court accordingly upholds the conviction.

### III. *Double Jeopardy*

■ Finally, Farmer argues that under Virginia law a person cannot be convicted of both reckless driving and driving under the influence in the same factual situation. Virginia law bars conviction for both offenses arising from a single act. *See Va.Code Ann.* § 19.2–294.1 (1992). Appellant's reliance on Virginia law is misplaced, however, because she was convicted under federal regulations. A distinguished panel of the Fourth Circuit decisively held in *United States v. Eubanks,* 435 F.2d 1261, 1262. (4th Cir.1971), that reliance on Virginia Code section 19.2–294.1 [10] is "inapposite" where the defendant is convicted under federal regulations.

### CONCLUSION

The Court finds that the United States Magistrate Judge did not abuse its discretion in admitting the Certificate of Analysis and that Appellant's attack on the evidence is without support in the record. The judgment of the United States Magistrate Judge, Cynthia D. Kinser, finding Appellant, Leigh A. Farmer, guilty of driving under the influence in violation of 36 C.F.R. § 4.23(a) (1992) and reckless driving in violation of 36 C.F.R. § 4.2 (1992) (incorporating *Va.Code Ann.* § 46.2–852 (1989 & Supp.1992)) is hereby AFFIRMED.

### ORDER

For the reasons set forth in the Memorandum Opinion entered this day, it is ADJUDGED and ORDERED that the decision of the United States Magistrate Judge, Cynthia D. Kinser, finding Appellant, Leigh A. Farmer, guilty of driving under the influence in violation of 36 C.F.R. § 4.23(a) (1992) and reckless driving in violation of 36 C.F.R.

§ 4.2 (1992) (incorporating *Va.Code Ann.* § 46.2–852 (1989 & Supp.1992)) is hereby AFFIRMED.

The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind.

9. For the text of 36 C.F.R. § 4.2 (1992) and the relevant Virginia Code provision, *Va.Code Ann.* § 46.2–852 (1989 & Supp.1992), *see supra* n. 2.

10. The Fourth Circuit in *Eubanks* specifically relied upon former Virginia Code section 19.1–259.1, now enacted as Virginia Code section 19.2–294.1. For the sake of clarity this Court refers to the current version.